**FORMOSA PLASTICS CORPORATION, USA Formosa Plastics Corporation, Texas, Appellants,**

v.

**PRESIDIO ENGINEERS AND CONTRACTORS, INC., Appellee.**

No. 13–93–294–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 2, 1995.

Rehearing Overruled Dec. 8, 1995.

---

Louis L. Bagwell, Robin E. Curtis, Kay M. Peterson, Baker & Botts, Houston, Mike A. Hatchell, Andy G. Navarro, Molly H. Hatchell, Ramey & Flock, Tyler, Lori M. Gallagher, Mariann Sears, Andrews & Kutch, Houston, Joe R. Greenhill, Bob E. Shannon, Joseph R. Knight, Baker & Botts, Austin, for appellants.

Robert P. Houston, Cynthia T. Sheppard, John Griffin, Jr., Houston, Marek & Griffin, Victoria, Christa L. Brown, Austin, for appellee.

## OPINION

PER CURIAM.

This case involves allegations of fraud, breach of contract, and breach of the duty of good faith and fair dealing, arising from a construction contract and the representations made during pre-contractual bid negotiations. The case was tried before a jury, which found that both the appellants and the appellee were entitled to damages. The trial court rendered judgment in favor of the appellee for $10.9 million after remitting a portion of the appellee's actual damages and then offsetting the appellants' damage award. By thirty points of error, the appellants challenge the sufficiency of the evidence and the jury charge. By three cross-points, the appellee challenges the remittitur, the offset, and the method of calculating attorney's fees. We affirm the judgment of the trial court.

Appellants, Formosa Plastics Corporation, USA and Formosa Plastics Corporation, Texas (collectively "Formosa"), produce resins for use in plastic and other products. Appellee, Presidio Engineers and Contractors, Inc. ("Presidio"), is a commercial construction business.

In 1989, Formosa commenced construction to expand its facility in Point Comfort, Texas by adding twelve plants spread over 1860 acres. Formosa contracted with several construction contractors to complete the job. In June 1990, Presidio received a "bid package" from Formosa. The "bid package" contained an invitation to bid on a job involving the construction of some 300 concrete foundations. The "bid package" also contained specifications about the job and a copy of the proposed construction contract. Formosa made several express representations in the "bid package." Specifically, Formosa represented (i) that, although it would purchase the concrete and other materials, the contractor would have control of, and be responsible for, ordering, scheduling delivery, and storing the concrete materials, (ii) that the construction was scheduled to progress continuously from beginning to end, and (iii) that the job was scheduled to be completed in ninety days.

Presidio submitted a bid of $596,451.97, with an allowance for 120 days to complete the job. Formosa accepted the bid and awarded Presidio the contract.

Presidio commenced construction, but was unexpectedly hindered by numerous delays. Presidio blames Formosa for causing the delays and pinpoints two particular reasons: (1) Formosa frequently restricted Presidio's access to the work site because of scheduling conflicts with other contractors, and (2) For-

mosa changed its policy and procedure for ordering and scheduling delivery of concrete materials; as a result, the concrete materials were often unavailable when Presidio was ready to use them to pour foundations.

Presidio notified Formosa that, because of these numerous delays, it would not be able to complete the job by the scheduled completion date. Presidio further notified Formosa that it expected to be compensated for all of its delay expenses. In response, Formosa told Presidio that it would be compensated for its delay expenses.

Presidio completed the job approximately four months after the contracted completion date. Formosa subsequently paid Presidio the contract price of $596,451.97, but refused to pay Presidio's claim for $356,000 in delay expenses. Formosa, instead, offered to settle Presidio's claim for as much as $200,000. Presidio rejected Formosa's offer.

Presidio then filed suit, alleging that Formosa (i) committed fraud, (ii) breached the contract, and (iii) breached its duty of good faith and fair dealing. With respect to its fraud claim, Presidio alleged that Formosa fraudulently induced Presidio to enter into the contract by misrepresenting the job could be completed in ninety days and by failing to disclose material facts concerning restricted access to the job site and the new policy for ordering and scheduling delivery of concrete materials. Further, Presidio alleged that Formosa fraudulently induced Presidio to continue performance on the contract by misrepresenting that Formosa would fully compensate Presidio for its delay expenses.

Formosa filed a counterclaim, alleging that Presidio breached the contract by failing to pour several concrete foundations according to contract specifications.

At trial, the court submitted twelve questions to the jury. In answer to Question Nos. 1 and 2A, the jury found that Formosa committed fraud against Presidio, causing Presidio to incur $1,500,000 in actual damages. In answer to Question Nos. 3 and 4, the jury found that Formosa breached its duty of good faith and fair dealing, causing Presidio to incur $1,500,000 in actual damages. In Question Nos. 2B, 5, and 8, the jury

found that, because Formosa committed fraud and breached its duty of good faith and fair dealing, Formosa should be assessed punitive damages in the amount of $10,000,000 to be awarded to Presidio. In Question Nos. 6 and 7, the jury found that Formosa breached the contract, causing Presidio to incur $1,267,000 in damages. In Question No. 9, the jury further found that, because Formosa breached the contract, Presidio should recover statutory attorney's fees equal to 40% of the breach of contract damages. Finally, in Question Nos. 10 and 11, the jury found that Presidio also breached the contract, thereby causing Formosa to incur $107,000 in damages.

Presidio elected the greater remedy of $1,500,000 in actual damages, which corresponded with either the fraud or breach of duty of good faith and fair dealing liability theories. The trial court subsequently remitted the lost profits component of the actual damage awards for all three liability theories, reducing each award by $800,000. Thus, the fraud and breach of good faith and fair dealing actual damage awards were reduced to $700,000, and the breach of contract actual damage award was reduced to $467,000. The court then offset Formosa's damages and rendered final judgment, awarding Presidio the sum of $10,920,998.03. This sum reflects $700,000.00 in actual damages, $10,000,000.00 in punitive damages, $160,562.05 in prejudgment interest, $186,800.00 in attorney's fees, and the $107,000.00 offset plus $19,364.02 in offset prejudgment interest. Formosa now appeals the trial court's judgment.

■ By point of error 9, Formosa challenges the legal and factual sufficiency of the evidence to support the finding that Formosa defrauded Presidio. In reviewing a legal sufficiency or "no evidence" point, we must view the evidence in a light that tends to support the jury's finding and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is some evidence to support the jury's finding, then Formosa's legal sufficiency challenge fails. *Stafford*, 726 S.W.2d at 16. In reviewing a factual sufficiency point, we must consider and

weigh all the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985).

The elements of actionable fraud are: (1) that a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that it should be acted upon by the party, (5) the party acted in reliance upon the representation, and (6) the party thereby suffered injury. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977). The jury was so instructed.

When one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992). Also, an expressed false opinion as to the happening of a future event may constitute fraudulent misrepresentation where the speaker purports to have special knowledge of facts that will occur or exist in the future. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). Further, fraudulent misrepresentation may occur when a party conceals or fails to disclose a material fact with the intent to induce another party to take some action, and the party knows the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth. *New Process Steel Corp. v. Steel Corp.*, 703 S.W.2d 209, 214 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *see also Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 516 S.W.2d 138, 142 (Tex.1974). The jury was also instructed as to these legal principles.

Intent to defraud is a fact question uniquely within the realm of the trier of fact and depends upon the credibility of the witnesses and the weight to be given to their testimony. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Although a party's intent is determined at the time the party made the representation, intent may be inferred from the party's subsequent acts after the representation is made. *Id.* at 434. Since intent to defraud is generally not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Id.* at 435. "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Id.*

At trial, Presidio's president, Bob Burnette, testified that he received the "bid package" from Formosa. He stated that he relied on express representations made in the "bid package" in calculating and submitting his (Presidio's) bid. Specifically, Burnette stated that he relied upon Formosa's representations that the construction project would progress continually from beginning to end and that it was scheduled to take only ninety days to complete. Based on these representations, Burnette stated that he was led to believe that Presidio: (i) would have unrestricted access to the work site, (ii) would be able to continuously work from beginning to end, and (iii) would be able to complete the job in ninety days, with a cushion of an extra thirty days to account for weather delays.

Burnette experienced otherwise. After Presidio commenced construction, Formosa restricted Presidio's access to the work site on several occasions. Formosa controlled the master construction schedule and often scheduled multiple contractors, doing mutually exclusive work, to be in the same work area at the same time. For example on one occasion, Formosa scheduled a contractor to install underground pipe in Presidio's work area at the same time that Presidio was scheduled to be pouring foundations.

Burnette testified that the flaws in Formosa's master schedule caused Presidio numerous and expensive delays. Burnette further testified that, had he known that the job was not capable of being completed in ninety days or that Presidio would be restricted from the job site, he would have calculated and submitted a different bid, taking into account

standby time and overtime pay for his employees.

Correspondence and internal memoranda, dated as early as April 1990 and well before Burnette received the "bid package" in June 1990, reflect Formosa knew that other construction contractors were having problems with timely access to their work areas because of flaws in the master schedule. Thomas Pena, one of Formosa's civil inspectors, admitted that Formosa knew in advance that contractors would encounter work access problems.

Burnette explained that Presidio's work was further hindered by its inability to obtain timely delivery of the concrete materials. Burnette testified that the "bid package" expressly represented that each contractor would have control over the delivery schedule of the concrete. Formosa unilaterally changed this policy and assumed (empowering Formosa with) control over the delivery schedule. The new policy allowed automatic built-in delays in the delivery schedule. Formosa's internal memoranda and correspondence reflect that this new policy became effective sometime after Burnette submitted Presidio's bid, but before Formosa accepted the bid. Formosa never notified Presidio of this new policy before entering into the contract. Burnette testified that had he known about this new policy, he would have revised his bid, taking into account the built-in delays for receiving the concrete.

Jack Lin, who is the director of Formosa's civil department and was responsible for preparing the "bid packages," admitted that the June 1990 "bid package" was deceptive because it expressly represented that contractors would be responsible and have control of ordering and scheduling delivery of concrete when, in fact, they did not. Thomas Pena, Formosa's civil inspector, testified that Formosa knew there were going to be delays due to Formosa's new control of the concrete delivery schedules. Camp Mehrens, Formosa's special assistant to the assistant vice president of construction, admitted that the "bid package" did not give contractors adequate or correct information as to enable them to make realistic bids.

Burnette testified that, on at least five different occasions, he notified Formosa in writing stating that Presidio was incurring additional costs because of the delays. Burnette also informed Formosa that Presidio expected to be compensated for such delay costs. Burnette stated that Formosa's executives verbally responded by acknowledging the delays and resulting costs and then assured him that, if Presidio stayed on the job, Formosa would fully and fairly compensate Presidio for its additional delay costs. Burnette testified that he met these executives face to face and was told "that [Presidio] would not be allowed to lose money on the job" because of the delays. Burnette further testified that, based on Formosa's repeated promises, he (Presidio) continued to perform on the job for an additional four months and incurred substantial additional costs.

Burnette explained that after Presidio completed the job, Formosa paid Presidio the contract price of $596,451.97. Burnette then submitted a claim for Presidio's additional delay expenses of $356,000, but appellants refused to pay the claim. Formosa's contract coordinator, Ronald Robichaux, commented on Formosa's refusal to pay Presidio's claim and admitted that Formosa adhered to a particular policy when handling situations such as Presidio's. According to Robichaux, Formosa's policy was such that, if contractors complained of delays and extra expenses during construction, then Formosa would tell the contractors whatever was necessary to keep them performing on the job— to "string them along"—and tell them they would get paid for the additional delay expenses. But later, when a contractor pursued his claim, Formosa would try to "whip saw" the contractor around, use less than good faith efforts to resolve the claim, and try to settle out of court. Robichaux admitted that Formosa's method of dealing with contractors was designed to lower costs. Further, Robichaux admitted that Formosa utilized its "economic superiority" to force contractors to deal with it on its terms.

After considering this evidence and applying the "no evidence" standard of review, we conclude that there is some evidence to support the jury's finding that Formosa defraud-

ed Presidio by inducing Presidio to enter into the contract and to continue performing on the contract. Formosa's "no evidence" argument fails.

After applying the factual sufficiency standard of review, we further conclude that the jury's finding of fraud is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Formosa's factual sufficiency argument fails. Accordingly, we hold there is legally and factually sufficient evidence to support the jury's finding of fraud. We overrule point 9.

By points of error 1, 8, 12, 13, 14, and 15, Formosa challenges the court's submission of the fraud issue to the jury. Formosa contends that Presidio had no viable common-law fraud claim as a matter of law, and thus the claim should not have been submitted to the jury. In light of our previous holding that there was legally and factually sufficient evidence to support the jury's finding of fraud, we overrule points 1, 8, 12, 13, 14, and 15.

■ Formosa next complains of the manner in which the trial court submitted the fraud issue in the jury charge. By point of error 11, Formosa alleges the court erred by combining several species of fraud—material misrepresentation, fraudulent inducement, fraudulent concealment, and fraudulent performance—into the one fraud question (Question No. 1) without providing separate answer blanks for each theory and corresponding damages questions. Formosa challenges Question No. 1, arguing the question is defective in that it does not require the jury to specify upon which fraudulent theory it based its answer. We note that Question No. 1, as submitted, follows verbatim the suggested fraud jury charge found in 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 105.01, 105.02, 105.021E, and 105.03 (1993).

■ In light of TEX.R. CIV. P. 277, we find Formosa's argument to be without merit. Rule 277, as amended in 1988, mandates broad form submission "whenever feasible." *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); TEX.R. CIV. P. 277. Rule 277 eliminates trial court discre-

tion in submitting separate questions for each element of a case. *Texas Dep't of Human Servs.*, 802 S.W.2d at 649. Rather, a trial court shall submit only the controlling questions in a case. *Id.* This does not include asking the jury to specify upon which ground or grounds it relied to answer the questions posed. *Id.*

We review the court's charge under an abuse of discretion standard. Abuse of discretion occurs only when the trial court acts without reference to any guiding principles. *Id.* Here, the trial court asked the controlling question of whether Formosa committed fraud against Presidio and then gave instructions by setting forth the common-law elements of fraud and related species of fraud. This does not amount to an abuse of discretion. *See id.* We overrule point 11.

■ By point of error 10, Formosa complains the trial court failed to include an instruction on "fraudulent nondisclosure" in Question No. 1. Formosa contends the court should have instructed the jury that nondisclosure, as a species of fraud, is not actionable unless a confidential relationship exists between the parties. Formosa had submitted this instruction in its proposed jury charge, but the court refused it.

A trial court is required to submit explanatory instructions as shall be proper to enable the jury to render a verdict. *Tex.R. Civ. P.* 277; *Wakefield v. Bevly*, 704 S.W.2d 339, 350 (Tex.App.—Corpus Christi 1985, no writ). Under Rule 277, an instruction is improper if it is a misstatement of the law as applicable to the facts of the case. *Forney v. Memorial Hosp.*, 543 S.W.2d 705, 708 (Tex.Civ.App.—Beaumont 1976, no writ); *see Herrera v. Balmorhea Feeders, Inc.*, 539 S.W.2d 84, 88 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.).

■ Here, as stated in Formosa's requested instruction, Formosa argues that a confidential relationship must exist for there to be actionable nondisclosure fraud. Formosa contends the jury should have been so instructed. We disagree. The existence of a confidential relationship is but one of the bases for imposing a duty to disclose information. A duty to speak may arise in at

least three other situations: First, when one voluntarily discloses information, he has a duty to disclose the whole truth. *State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 681 (Tex.App.—El Paso 1984, writ dism'd by agr.). Second, when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue. *Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 n. 6 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Finally, when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex.App.—San Antonio 1993, writ denied); *International Security Life Ins. Co. v. Finck*, 475 S.W.2d 363, 370 (Tex.Civ.App.—Amarillo 1971), *rev'd on other grounds*, 496 S.W.2d 544 (Tex.1973). Here, Formosa's duty to speak arose in at least one, if not all, of these three situations. Thus, we conclude that Formosa's requested instruction is too limited and therefore is a misstatement of the law as applicable to the facts of this case. The trial court correctly refused to submit Formosa's proposed instruction. Accordingly, we overrule point 10.

■■■ By points of error 25, 26, and 27, Formosa challenges the fraud damage award of $700,000. Formosa contends that, not only is the evidence legally and factually insufficient to support the award of $700,000, but that such award is based upon a measure of damages not recognized by Texas law.

■■■ Under Texas common law, there are two measures of damages for misrepresentation: (1) the "out of pocket" measure—the difference between the value of that parted with and the value of that received, or (2) the "benefit of the bargain" measure—the difference between the value as represented and the value actually received. *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984). Presidio's president, Bob Burnette, testified the value of the work—the materials and labor—that Presidio parted with was $1.3 million—$831,000 in actual costs plus profit markups as called for in the contract. Burnette stated this sum represents the reason-

able and necessary cost for doing the job and the amount he would have submitted as a bid had he known the true facts about the Formosa job. Burnette also testified that the value Presidio received for its work was approximately $600,000. In applying the "out of pocket" measure, the difference between the $1.3 million parted with and the $600,000 received is $700,000.

Thus, after applying the "no evidence" and factual sufficiency standards of review, we conclude there is some evidence to support the award of $700,000 for fraud actual damages and that such award is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule points 25, 26, and 27.

By points of error 17, 19, 21, 22, 23, and 24, Formosa challenges the legal and factual sufficiency of the evidence to support the jury's finding of $10,000,000 in punitive damages. Question Nos. 2B and 8 address the punitive damages issue. These two questions track the language found in suggested jury charge, 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 110.19 and 110.22 (1993). In answer to Question No. 2B, the jury found that Formosa committed fraud "wilfully, wantonly, intentionally or with conscious indifference to the rights of Presidio . . . ." In Question No. 8, which was predicated on an affirmative finding in Question No. 2B, the jury found that $10,000,000 should be assessed against Formosa and awarded to Presidio as exemplary damages. Formosa contends these punitive damages are excessive.

■■■ Punitive (or exemplary) damages are levied against defendants to punish for outrageous, malicious, or otherwise morally culpable conduct. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex.1994); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(3) (Vernon Supp.1995) (defining exemplary damages as "any damages awarded as an example to others, as a penalty, or by way of punishment"). Fraudulent misrepresentations used to induce creation of a contract, coupled with damages caused by the misrepresentation, will support an award for exemplary damages. *Artripe v. Hughes*, 857 S.W.2d 82, 87 (Tex.App.—Corpus Christi

1993, writ denied); *see* Tex. Civ. Prac. & Rem.Code Ann. § 41.003(a)(1) (Vernon Supp. 1995). A finding of conscious indifference to the rights of others will support an award of exemplary damages. *Spoljaric*, 708 S.W.2d at 436; *Trenholm*, 646 S.W.2d at 933. Fraudulent inducement is enough to support a finding of conscious indifference. *Spoljaric*, 708 S.W.2d at 436; *Trenholm*, 646 S.W.2d at 933. Thus, our previous holding that there is factually sufficient evidence to support the finding that Formosa fraudulently induced Presidio into entering and performing on the contract is enough to support a finding of conscious indifference. *See Spoljaric*, 708 S.W.2d at 436.

■■■■ Exemplary damages must be reasonably proportional to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). There can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable; this determination depends on the facts of each case. *Id.* In *Alamo Nat'l Bank v. Kraus*, the Texas Supreme Court set forth several factors to consider when determining whether an award of exemplary damages is reasonable, including: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, (5) the extent to which such conduct offends a public sense of justice and propriety, and (6) the net worth of the wrongdoer. *Kraus*, 616 S.W.2d at 910; *see also Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988). The jury was instructed as to these factors.

■■■ The record reflects that Formosa employees admitted the representations in the "bid package" were deceptive and did not give contractors adequate or correct information to formulate realistic bids. The record also reflects that, whenever contractors complained about the unexpected Formosa-induced delay expenses, Formosa adhered to a policy of enticing the contractors to continue performing on the contract by "stringing them along" and telling them they would be compensated for all delay expenses, while fully intending not to do so. Although no evidence was submitted as to Formosa's net worth, there was testimony that Formosa believed itself to be in an economically superior position such that it could force contractors to abide by its terms.

Having considered this evidence, the jury could have reasonably concluded that Formosa's own admission of deceit, coupled with its standing corporate policy of "stringing along contractors" for its own economic gain, is enough to offend a public sense of justice and propriety. After applying the "no evidence" and factual sufficiency standards of review, we conclude that there is some evidence to support the jury's award of $10,000,000 in punitive damages and that such award is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

■■■ Formosa contends the ratio between the $10,000,000 punitive damages and the $700,000 actual damages is disproportionate. We calculate the actual damages/punitive damages ratio to be roughly 14:1. This ratio, however, should not be a determinative factor in assessing punitive damages. *See e.g., TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 453–462, 113 S.Ct. 2711, 2718–2722, 125 L.Ed.2d 366 (1993) (explaining that the dramatic disparity between the actual and punitive damages—a ratio of 526:1—should not be controlling). We overrule points 17, 19, 21, 22, 23, and 24.

By points of error 2, 3, 4, 5, 6, 7, 18, 20, 28, 29, and 30, Formosa complains of: (i) the court's submission of the issue of breach of duty of good faith and fair dealing to the jury, and (ii) the sufficiency of the evidence to support the jury's finding of such breach and resultant damages. Because we have already determined there is legally and factually sufficient evidence to support the award of actual and punitive damages based on fraud liability, we need not address any of these points concerning the issue of breach of the duty of good faith and fair dealing. Tex. R.App. P. 90(a).

■■■ By point of error 16, Formosa claims the punitive damages question—Question No. 8—was defective because it was "hooked" on a "yes" answer to *either* wilful fraud or wilful breach of the duty of good faith and fair

dealing, and not independently. Formosa complains the jury was not required to specify upon which conduct it based its punitive damages award. Formosa alleges it was denied the right to know for which conduct it is being punished and thus is now prevented from making a proper presentation of its case on appeal.

In reviewing the record, we note that Formosa did not raise this complaint at trial. Formosa neither objected to Question No. 8 on this ground nor tendered a proposed question apprising the court of its complaint. Formosa failed to preserve this complaint and thus waived it. TEX.R. CIV. P. 274; *see Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987). We overrule point 16.

Presidio raised three cross-points. By its first cross-point, Presidio challenges the court's remittitur of $800,000, which reduced the fraud actual damages from $1.5 million to $700,000. The trial court explained in its letter suggesting remittitur and its subsequent "Order Clarifying Remittitur" that it was remitting the lost profits component of Presidio's fraud damages because there was factually insufficient evidence to support an $800,000 lost profits award. Presidio contends otherwise.

We review remittiturs under a factual sufficiency standard. *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex. 1987). We should uphold a trial court's remittitur only when the evidence is factually insufficient to support the verdict. *Id.* at 641. In conducting such a review, we must consider and weigh all of the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *Dyson*, 692 S.W.2d at 457.

Lost profits are the natural and probable consequences of the wrongful conduct. *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098–99 (Tex. 1938). Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). However, the injured party must do more than show that they suffered some lost profits. *Id.* at 649. The amount of loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Id.* At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained. *Id.*

The record must show how the lost profits were calculated. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992); *see Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 259 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Recovery of lost profits must be predicated on one complete calculation; piecemeal methods of calculating lost profits are insufficient. *Szczepanik*, 883 S.W.2d at 649; *Heine*, 835 S.W.2d at 85. To recover for lost profits, a party must show either a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty. *Allied Bank W. Loop v. C.B.D. & Assocs.*, 728 S.W.2d 49, 54–55 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *see Southwest Battery Corp.*, 115 S.W.2d at 1098–99.

Presidio's president, Bob Burnette, testified that Presidio incurred a total of $900,000 in lost profits as a result of Formosa's fraud. Burnette arrived at this figure based on a number of factors. Burnette explained that Presidio is a wholly-owned subsidiary of Petropak, Inc. Each fiscal year, Presidio and Petropak, Inc. filed consolidated tax returns and maintained consolidated balance sheets. Burnette testified that collectively Presidio and Petropak, Inc. turned a profit of $300,000 for the year prior to the Formosa contract. Burnette further testified that Presidio was capable of maintaining a profit of $300,000 each year. However, because of all the unexpected delays on the Formosa job, Presidio had to use all of its cash reserves and then borrow money to complete the job. Then, after the job was completed, Presidio had to sell its equipment and terminate some employees because it could not afford to keep them on the payroll. Further, Presidio ini-

tially lost its ability to be bonded, thereby losing potential contracts.

Burnette stated that he believed that it would take about four years before Presidio would financially recover from Formosa's fraud. Burnette opined that Presidio lost $300,000 in profits for each of the two years after the Formosa contract. He anticipated another loss of $200,000 for the third year and yet another loss of $100,000 the fourth year, bringing the total loss to a sum of $900,000.

Burnette presented minimal objective data, none of which objectively supports his opinions. Burnette produced Presidio's and Petropak, Inc.'s joint tax returns for the six years prior to the Formosa contract. These tax returns indicate Presidio's and Petropak, Inc.'s collective profit history:

| | |
|---|---|
| 1989 | —$300,000 profit |
| 1988 | —$ 80,000 profit |
| 1987 | —$400,000 loss |
| 1986 | —$150,000 profit |
| 1985 | —$800,000 profit |
| 1984 | —$ 7,000 loss |

These figures reflect that Presidio's and Petropak, Inc. collectively averaged $154,000 in profits per year.

On cross-examination, Burnette acknowledged that each of the six joint tax returns designated Presidio's separate taxable income, thus reflecting Presidio's separate profit history:

| | |
|---|---|
| 1989 | —$308,000 profit |
| 1988 | —no reported income |
| 1987 | —no reported income |
| 1986 | —no reported income |
| 1985 | —$116,000 loss |
| 1984 | —$174,000 loss |

These figures indicate that Presidio's total profit for six years was $18,000.

Although Presidio offered numerous business documents into evidence, the record is devoid of any objective data showing that Presidio, independent of Petropak, Inc., had a profitable history, let alone a profitable history of $300,000 per year. Further, the record is devoid of any objective data showing the actual existence of future contracts from which lost profits could be calculated with reasonable certainty.

Having considered the evidence, or lack thereof, and after applying the factual sufficiency standard of review, we conclude the trial court properly remitted the $800,000 lost profit damages because such an award would be against the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Presidio's first cross-point.

At trial, Formosa claimed that Presidio breached the contract by causing several of the foundations to be "out of tolerance" with the specifications called for in the contract. Formosa requested to be compensated in the amount of $169,000 for damages. The jury awarded Formosa $107,000, and the trial court offset this amount, along with prejudgment interest, against Presidio's $10.9 million judgment.

■■■ By its second cross-point, Presidio challenges the offset on two grounds. First, Presidio contends there is "no evidence" to support the jury's finding of $107,000 in damages. And, second, Presidio contends that, as a matter of law, the offset damage award is contrary to law and public policy.

■■■ After reviewing the record, we conclude that Presidio waived its "no evidence" complaint. Although Presidio was allowed to assign cross-points in response to Formosa's appeal, Presidio is not exempt from the general rule that its complaints must be preserved for review. TEX.R.APP. P. 52(a). To preserve a "no evidence" point, the point must be asserted by one of the following: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the relevant issue, (4) a motion to disregard the jury's answer to the issue, or (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). At trial, Presidio did not object to the submission of the two relevant questions addressing whether Formosa was entitled to damages—Question Nos. 10 and 11—on "no evidence" grounds. Further, Presidio did not move to disregard the jury's findings on "no evidence" grounds. Because Presidio

failed to preserve its "no evidence" complaint by any of the above-mentioned available means, it cannot now raise a "no evidence" complaint for the first time on appeal. *Villalpando v. De La Garza*, 793 S.W.2d 274, 277 (Tex.App.—Corpus Christi 1990, no writ). Presidio waived its "no evidence" argument in its second cross-point.

■ We next consider Presidio's argument that the offset damage award is contrary to law and public policy. Presidio argues that public policy dictates that a perpetrator of fraud should not be allowed to recover for a breach of the very contract he fraudulently induced. Further, Presidio argues that fraud vitiates every transaction tainted by it, citing *Middleman v. Atlantic Mut. Ins. Co.*, 597 S.W.2d 565, 568 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). Presidio contends that the jury's finding that Formosa defrauded Presidio forecloses Formosa's right to recover losses caused by Presidio's defective performance on the contract.

■ One who is induced by fraud to enter into a contract has the choice of two remedies: he may either stand to the bargain and recover damages for fraud, or he may rescind the contract. *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 238–39 (1957). Under the doctrine of election of remedies, he cannot pursue both remedies. *Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809, 810 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). Here, Presidio elected to "stand to the bargain"—to affirm the contract—and sue for damages.

■ When a plaintiff stands to the bargain in a fraud action, his right to damages must accommodate the bargain as performed, and the opposing party is entitled to pursue ordinary contract rights and defenses. *See e.g., Advance–Rumely Thresher Co. v. Higgins*, 279 S.W. 531, 535 (Tex.Civ.App.—Amarillo 1926, writ dism'd) (allowing the defendant, who was sued for fraud damages for the fraudulent sale of farm machinery, to

recover from the plaintiff the value of the use of the machinery). Here, Formosa was entitled to pursue its contract rights to recover damages for Presidio's breach of contract. The trial court acknowledged Formosa's damage award and properly offset it against Presidio's award. We overrule Presidio's second cross-point.

■ By its third cross-point, Presidio contends the trial court improperly calculated Presidio's attorney's fees. We note that Formosa does not question or contest the propriety of awarding the attorney's fees to Presidio.

In answer to Question No. 9, the jury found that Presidio is entitled to reasonable attorney's fees in an amount equal to 40% of Presidio's recovery for breach of contract damages. The trial court, after remitting the lost profits damages, calculated Presidio's breach of contract damages to be $467,000.[1] The court then found 40% of the $467,000 contract damages to be $186,800 and awarded that amount as attorney's fees.

Presidio argues the court improperly applied the 40% fee to only the actual damages, whereas the court should have calculated the 40% fee based on the total recovery. Presidio contends the court should have calculated Presidio's total recovery first, which includes the amount for attorney's fees, and then applied the percentage.[2] We disagree.

■ Claims for attorney's fees belong to the litigants, not to the attorneys. *Satellite Earth Stations East, Inc. v. Davis*, 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied). The statute under which Presidio based its claim for attorney's fees, TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986), envisions that a party, who recovers damages for breach of contract, receives a full recovery plus a reasonable attorney's fee. *Rauscher Pierce Refsnes, Inc. v. Koenig*, 794 S.W.2d 514, 516 (Tex.App.—Corpus Christi 1990, writ denied). Presidio's suggested method of calculation has the effect of award-

1. This sum reflects the $1,267,000 in actual contract damages, less the $800,000 remittitur.

2. Presidio suggests "the calculation of the total 'recovery' requires that 60% be divided into the sum representing actual damages. . . . The attorney's fee is then 40% of that figure." We find no rhyme or reason behind this suggested method of calculation.

ing attorney's fees on top of attorney's fees. This is improper. *See Goodyear Tire & Rubber Co. v. Portilla*, 836 S.W.2d 664, 672 (Tex.App.—Corpus Christi 1992), *aff'd*, 879 S.W.2d 47 (Tex.1994). The proper method is to calculate the applicable percent of the actual damages; that amount then represents the attorney's fee award. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 428 (Tex.1995). Here, the trial court properly calculated Presidio's attorney's fee award. Accordingly, we overrule Presidio's third cross-point.

Having considered all of Formosa's and Presidio's points and cross-points, we AFFIRM the judgment of the trial court.