NO. 07-01-0236-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 12, 2002

_____

MARION BRECHEISEN,

Appellant

v.

GREG JAMES AND KRISTA JAMES,

Appellee

_____

FROM THE 84TH DISTRICT COURT OF HANSFORD COUNTY;

NO. 7067; HON. WILLIAM D. SMITH, PRESIDING

_____

Before QUINN and JOHNSON, JJ. and BOYD, SJ.[1]

Marion Brecheisen (Brecheisen) appeals a judgment rendered in favor of Greg and Krista James (the James) after a trial by jury. Via five points of error, Brecheisen complains that the trial court erred in 1) failing "to grant a 'take nothing' judgment . . . as to the appellee's cause of action for breach of contract because of their prior unexcused failure to comply with the farm lease agreement by the James, the plaintiffs and appellees," 2) overruling "the appellant's motion for judgment on the verdict . . . since the jury finding

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

on jury question no. 3 was an immaterial jury question and in denying the appellant's motion for judgment since jury findings no. 2 and no. 3 were in irreconcilable conflict and thus 'no evidence' to support the judgment rendered by the court in favor of the appellees,'" 3) "overruling the appellant's motion for judgment since there was 'no evidence' to support the jury finding of 'lost profits' on the contract in favor of the appellants with a reasonable certainty, only speculation and 'hoped for profits,'" 4) "failing to give appellant's requested jury question on justification for rescinding the farm lease . . . for material breaches of the contract, for fraud, conversion and sub-letting of the grassland; and, . . . to give appellant's requested jury question on fraud in the inducement and fraud . . .," and 5) awarding the James attorney's fees while denying them to him. We affirm.

## Background

In April of 1999, the James leased land from Brecheisen for seven years. The primary purpose of the lease was to develop the land for growing alfalfa. The land included in the lease was the southwest quarter of section 1, section 3, section 8 and section 9 of a farm located in Hansford County (referred to as the Hansford County Lease). However, according to the James at trial, the lease was eventually to include all of the sections of Brecheisen's Hansford County farm. One clause in the lease required the James to plant one circle of alfalfa on either section 8 or 9 in the Fall of 1999 and then on both sections in the Spring or Fall of 2000. Other terms of the lease included the use of a tractor owned by Brecheisen, and the use of the hour tractor meter located on the farm implement. Furthermore, the James were to keep the tractor mechanically maintained.

In June of 1999, subsequent to the enactment of the lease, hail hit the wheat crop already planted on the aforementioned sections. The James had to wait until an insurance

2

adjuster released the land before they could clear it of the wheat stubble that remained and prepare it for planting alfalfa. However, according to the James, the land could not be prepared in time for planting alfalfa; so, milo was planted instead. This purported to constitute a breach of the lease, according to Brecheisen. He also believed that other breaches had occurred. Thus, he sent a demand letter to the James on December 3, 1999, requesting that they vacate the premises immediately. The James complied with the demand. They also filed suit for wrongful repudiation and breach of the lease.

After Brecheisen answered the petition, he counterclaimed against his ex-tenants. The dispute was then tried to a jury. Based upon the jury's answers to questions submitted to it, the trial court entered judgment in favor of the James. Brecheisen moved to modify, correct or reform the decree, which motion the trial court denied. He, then, appealed.

### Point One - Motion to Modify, Correct or Reform the Judgment

As best as we can surmise from the substance of his argument, Brecheisen claims through his first point that the trial court erred in denying his motion to set aside the judgment in favor of the James. This was error because: 1) the James breached the contract first; and, 2) there was no evidence to support the jury's finding that their breaches were not material. We overrule the point.

In short, Brecheisen attempts to escape liability by arguing that his opponents materially breached the lease first, which breach excused him from performing. In turn, if he was excused from performing his obligations, then they could not recover against him. Implicit in this argument is the need to attack the jury's answer to point three and illustrate why it lacked evidentiary support. Through the third point, the jury was asked to decide if "any unexcused failure to comply by the James concern[ed] a material obligation of the

3

farm lease," and it said "no." If this answer enjoys the requisite evidentiary support, then it matters not that the James committed the breaches. So, logic dictates that Brecheisen had to present an issue expressly attacking the weight of the evidence supporting the jury's answer to point three. And, that he does not do. No such issue appears in his brief. Rather, he quotes general rules of law, cites authority to support the quotes, and then describes how the James breached the lease. Then he merely asserts the conclusion that "planting . . . alfalfa for hay was the 'essence' of the contract" and that the "finding . . . that the breaches by the James were not material . . . [was] against the great weight and preponderance of the evidence and [was] simply wrong as a matter of law." Such cursory argument utterly lacking in substantive analysis does not constitute proper briefing and results in waiver of the point on appeal. *In re Williams*, 998 S.W.2d 724, 730 (Tex. App.— Amarillo 1999, no pet.).

Yet, even if his brief can be read as properly questioning whether the jury's answer to point three enjoyed both legally and factually sufficient evidentiary support, we remain unable to address his contentions. This is so due to the wording of jury point two and the answer to same. Through it, the jurors were asked: "[w]ere *all* of the James' failures to comply, if any, excused or made impracticable, as defined below?" (Emphasis added). To it, they replied: "[n]o." The point being so worded and given that response, we do not know which "failures to comply" were contemplated by the jury or found to be excused or unexcused.[2] The answer to point two merely informs us that "all" of them were not excused. So, all but one may have been excused or none save one may have been. In

_____

[2]Brecheisen does not complain on appeal about the manner in which point two was worded.

4

other words, we are left to guess about which ones were and were not excused. And, because of that, Brecheisen denied us a record sufficient to assess whether the jury erred in concluding that the "failures to comply" which were not excused (whatever they may be) were actually material. *See Melendez v. Exxon Corp.,* 998 S.W.2d 266, 274 (Tex. App.— Houston [14th Dist.] 1999, no writ) (holding that an appellant has the burden to present us with a record illustrating reversible error).

### *Point Two - Irreconcilable Conflicts in Jury Questions Two and Three*

Next, Brecheisen contends that the answer to jury points two and three are in "irreconcilable conflict." So too does he argue that point three was immaterial and should not have been submitted. We overrule the contentions.

Again, through question two, the jurors were asked if all breaches allegedly committed by the James were excused, and they answered "no." In response to question three, *i.e.* whether "any unexcused failures to comply by the James concern[ed] a material obligation of the farm lease," they also answered "no." We see no irreconcilable conflict between the two answers for the simple reason that each question addressed distinct topics. In other words, before Brecheisen could justifiably end the lease due to a breach by the James, there had to be 1) a breach by the James, 2) which was not excused, and 3) which was material. Again, only a material breach of the lease would have triggered Brecheisen's right to end the agreement. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). Furthermore, whether the breach was excused does not dictate whether it was material, nor vice-versa. Indeed, there could be instances of immaterial defaults that went unexcused or material defaults that went excused; in either of those

5

situations, the prerequisites for rescission would not exist. Again, to enable Brecheisen to end the lease, not only must the James have had to breach the agreement in a material way but also the jury would have had to find the breach material. Thus, the points were not irreconcilable but rather elemental to Brecheisen's right to rescind.

As to the contention that point three should not have been submitted to the jury because it was immaterial, we refer to our discussion in the immediately preceding paragraph. If the breach had to be material before Brecheisen could rescind (as it had to be), then the jury had to determine whether defaults allegedly committed by the James were of that character. *See ReMax, Inc. v. Katar Corp.,* 961 S.W.2d 324 327 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (holding that only a material breach of contract excuses the opposing party from performing). So, jury point three was very relevant and material to the dispute.

To the extent that Brecheisen suggests that no evidence supported the jury's answer to point three because it was undisputed that the James sub-let the property without permission, we do not know if that was one of the defaults that the jury found he excused.[3] Moreover, there appears evidence of record from which a jury could have held that Brecheisen excused it.

Finally, and to the extent that Brecheisen contends that point three should not have been submitted to the jury because it was defective and a question of law, he cites no authority for the proposition. Nor is his conclusion anything but a conclusion bereft of

---

[3]In his second point of error, Brecheisen mentions no other breach which was allegedly undisputed or established as a matter of law.

analysis.  Consequently, it was not briefed as required by Texas Rule of Appellate Procedure 38.1(h) and presents nothing for review.  *In re Williams*, 998 S.W.2d at 730.

### Point Three - Lost Profits

In his third point, Brecheisen contends that the trial court gave the wrong definition in jury question five because "lost profits must be proved with 'reasonable certainty.'"  Specifically, according to Brecheisen, "a party must show either (1) a history of profitability or (2) the actual existence of future contracts from which lost profits can be calculated with reasonable certainty."  We overrule the point.

In reviewing the record, we note that the jury was asked to determine the "sum of money, if any if now paid in cash, [that] . . . would compensate the James for the actual damages which they sustained as a proximate cause of [] Brecheisen's failure, if any, to comply with, the farm lease?"  Accompanying this question was the instruction that the jury could "consider lost profits, if any, of the James over the seven year term of the lease that [] Brecheisen should have foreseen."  Finally, while inquiring into the amount of future damages which may have been suffered, the court informed the jury to assess the amount which "in reasonable probability will be sustained . . . ."  The jury found that the James had suffered $10,000 in past damages and $30,000 in future damages.

To the extent that he contends that the trial court was obligated to instruct the jury that lost profits must be established with "reasonable certainty," Brecheisen failed to tender to the trial court a written instruction containing that or like verbiage at the time of the objection.  Consequently, he waived the complaint.  *See Libhart v. Copeland*, 949 S.W.2d 783, 799 (Tex. App.—Waco 1997, no writ) (holding that a party who stands to benefit from

a limiting instruction on damages must object to the question submitted and tender a proposed instruction in substantially correct form to preserve the complaint); *National Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 507 (Tex. App.—Corpus Christi 1989, writ denied) (holding the same). Nor did he urge below (as he does now on appeal) that an instruction limiting lost profits to those which were "a natural, probable, foreseeable consequence of" the breach was appropriate. So, that contention was also waived.

Next, to the extent he contends that no evidence or factually insufficient evidence supported the award of lost profits, we note the following rules. First, a party to a contract who is injured by its breach may recover lost profits. Though there may be a myriad of ways to prove such damage, the actual measure is represented by the difference between the sum the injured party was to receive less the expenses it would have incurred had it performed. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992); *St. Paul Surplus Lines, Ins. Co. v. Dal-Worth Tank Co.,* 917 S.W.2d 29, 60 (Tex. App.—Amarillo 1995), *rev'd. in part on other grounds*, 974 S.W.2d 51, 53 (Tex. 1998). Moreover, the loss need not be susceptible to exact calculation. *Formosa Plastics Corp. v. Presidio Eng. & Contr., Inc.*, 941 S.W.2d 138, 149 (Tex. 1995). Rather, the amount of loss need only be shown by competent evidence with reasonable certainty. *Id.* And, what constitutes such evidence is a fact intensive determination. *Id.* "At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount . . . may be ascertained." *Id.*

Finally, that a business is new does not alone prevent the recovery of lost profits. *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 505 (Tex. 2001). If a profit history is

unavailable, damages may still be established through other objective data as long as that data permits calculation of the loss with reasonable certainty. *Id.* With this said, we turn to the evidence before us.

Brecheisen attacks the verdict by generally averring that the James presented no evidence of past profitability and had no future contracts. Then, he attacks the testimony provided by the James' banker and refers to past income tax returns as evidence of no profitability. Yet, absent from his argument is discussion illustrating why the testimony of Greg James did not constitute some evidence supporting the verdict. Nor did he explain why the spreadsheets containing profit and loss projections which were thoroughly discussed by Greg James fell short of supporting the jury's verdict. Furthermore, the numbers contained in those spreadsheets were not simply manufactured. Rather, they were derived from the expenses and profitability experienced by Greg James and others in operating a family farm (in nearby Oklahoma) and growing crops like those he intended to grow on the Brecheisen lease. For instance, the income and expense projections were derived from historical data relating to 1) crop yield per acre, 2) the sales price of grains and grasses he intended to grow, and 3) the expense of growing those particular crops as experienced while conducting other farming operations. So, the projections offered by Greg James regarding lost profits were actually based upon objective income and expense figures of a comparable business in which he was involved. And, those projections yielded an educated estimate (again exactitude is not required) of lost profits at slightly under one million dollars. The jury awarded $30,000. Given this, we cannot say that no evidence supported the award.

9

## *Point Four - Requested Jury Question*

In his fourth point, Brecheisen complains that the trial court erred in failing to submit points on whether he was justified in terminating the lease and whether the James defrauded him. We overrule the point.

Regarding the point involving justification for rescinding the lease, the argument is premised upon the belief that the James materially breached the terms and requirements of the document. Because he so breached the lease, Brecheisen was purportedly entitled to rescind the agreement. However, in response to jury question three, the jury found immaterial the breaches of the lease which Brecheisen did not excuse. Since the jury found that they were immaterial, we see no harm arising from the failure to ask the jury to decide if Brecheisen was entitled to end the lease because the breaches were material. And, again, there is evidence that supports the finding of immateriality.

As to the issue about fraud and fraud in the inducement, one complaining of the failure to submit an issue must illustrate that evidence existed warranting the submission of the issue. *See Lee-Wright, Inc. v. Hall,* 840 S.W.2d 572, 577 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding that an issue must, among other things, be raised in the pleadings and supported by the evidence before it can be submitted to the jury). Thus, to secure reversal, it was incumbent upon Brecheisen to illustrate that there existed some evidence of record sufficient to raise a fact issue upon each element of his causes of action. He does not do that. For instance, he cites us to no evidence which indicates that the James made a promise while intending not to fulfill it. That is elemental to the claim of fraud in the inducement. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001)

10

(mentioning this to be an element of fraud in the inducement). Nor does he argue that such evidence existed. Similarly absent is reference to any evidence illustrating that the James made a material misrepresentation which he knew was false and upon which Brecheisen relied. Those matters are elemental to a general claim of fraud. *See Formosa Plastics Corp. v. Presidio Engineers & Contr., Inc.*, 941 S.W.2d 138, 144 (Tex. 1995) (discussing the elements of fraud). Consequently, Brecheisen has not carried his appellate burden of proving that he was entitled to the submission of the issues in question.

### Point Five - Attorney's Fees

In his last point of error, Brecheisen argues that the trial court erred in entering judgment upon the jury's verdict regarding attorney's fees. That is, the jury awarded the James such fees while denying them to Brecheisen, and the trial court entered judgment commensurate with that verdict. This was error, according to Brecheisen. We overrule the point.

Concerning the award to the James, Brecheisen argues that they were not entitled to same since they were "not entitled to judgment on the basis of breach of contract." Yet, the jury concluded that Brecheisen breached the lease and awarded the James $40,000 in damages to recompense the breach. Then, judgment was entered upon that verdict. Moreover, Brecheisen failed to establish on appeal that the jury erred in finding as it did or that the trial court erred by upholding the verdict and incorporating it into a final judgment. Thus, Brecheisen incorrectly suggests that the James were not entitled to fees because they were "not entitled to judgment on the basis of breach of contract."

As to that portion of the verdict denying him attorney's fees, he contends that it is against the great weight of the evidence. And, this is allegedly so because the jury found that the James breached the lease (via its answer to point one), that not all the breaches were excused (via its answer to point two), and that he was entitled to $7900 for the James' use of grasslands. Thus, he concludes, he was a prevailing party entitled to fees under §38.01 *et seq.* of the Texas Civil Practice and Remedies Code. Admittedly, one must be a prevailing party to recover fees under that provision. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997). Yet, that is not all. He must also show that the fees sought were reasonable. *Prairie Valley I.S.D. v. Sawyer*, 665 S.W.2d 606, 611-12 (Tex. App.—Fort Worth 1984, writ ref'd. n.r.e.). Here, Brecheisen cites us to no evidence suggesting that his fees were reasonable. Nor does he argue that they were. And, this is of import because the recovery awarded him by the jury, *i.e.* the $7900, and upon which he bases his right to receive fees was nothing more than the sum of money tendered by the James to him on March 28, 2000, a date approximately six months before Brecheisen filed his "Counter-Plaintiff's Original Petition . . ." for damages.[4] In short, if the attorney's fees he incurred were unreasonable because he recovered nothing other than what the James previously agreed to pay him before filing the counterclaim, we cannot say that the jury erred in denying him same. And, a jury may well have concluded that the fees he sought were unreasonable under that circumstance. Finally, Brecheisen does not argue otherwise.

---

[4]According to the record, the James not only tendered to Brecheisen the $7900 on March 28, 2000, but also other checks allegedly representing monies they agreed were owing to him. Those checks totaled $24,220, which sum happens to exceed the $24,200 that Brecheisen claims (in his brief) the trial court awarded him through the judgment.

12

Having overruled all points raised by Brecheisen, we affirm the judgment of the trial court.


Brian Quinn
Justice

Do not publish.