**LEE–WRIGHT, INCORPORATED, d/b/a Professional Flooring Supply Company, Appellant,**

v.

**Frank HALL, Appellee.**

**No. 01–91–00899–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 20, 1992.

S. Mitchell Glassman, Elene B. Glassman, Houston, for appellant.

Jim Tatum, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and DUNN, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a jury verdict in a breach of contract action for wrongful termination of employment. We affirm.

Background

On November 5, 1987, Frank Hall, appellee, and Lee–Wright, Incorporated (Lee–Wright), appellant, entered into a contract for the sale of the corporate assets of Hall's floor covering business, Carpet and Flooring Supplies, Inc. located in Houston. Lee–Wright, which is principally located in Fort Worth, approached Hall because it wanted to open a branch office in Houston. The contract for sale included an agreement that Lee–Wright would employ Hall to manage the Houston branch for a salary of $2,000 per month for a period of five years, hospital benefits, and 10% of the net profits of the Houston branch. The contract specifically provided that:

Lee–Wright, Inc. d/b/a Professional Flooring Supply Co. of Texas, does hereby agree to employ Frank E. Hall, in accordance with standard company policies. In addition Lee–Wright, Inc. agrees to pay to Frank E. Hall a salary of $2,000 per month. Furnish hospitalization and major medical insurance as provided to all other company employees. In addition, pay a sum equal to 10% of the net profit before taxes for the prior quarter of the Houston, Harris County, Texas, branch of this company. Standard calendar quarters shall be used and payment shall be made by the 17th of the month following the end of a quarter. This agreement shall be for a period of five (5) years beginning October 1, 1987 and ending September 30, 1992, and can be extended beyond the expiration date with written agreement of both parties. This agreement shall become null and void should Frank E. Hall leave the company.

When the contract was signed by the parties, the only modifications made to this provision of the contract were to increase the base salary from $1,400 per month to $2,000 per month and to strike the end of the last sentence, which provided that the agreement would become null and void "should Frank E. Hall in any way be unable to fulfill his job responsibilities." These modifications were initialed by both parties.

Hall's specific job duties were not outlined in the agreement. Mr. James Lee, chairman and chief executive officer of Professional Flooring Supply, however, testified that he was aware that Hall, being an older individual, wanted to retire in five years and that the contract provided that Hall would continue to receive his salary, profits, and benefits under the contract so long has he did not leave the company. Hall also testified that the possibility that he might become disabled during the term of the contract was taken into account and that the parties agreed that the only cause for terminating the contract would be if Hall quit or left the company.

Hall testified that on March 16, 1988, he injured his shoulder on the job. The next day, Hall informed James Lee of his injury, who completed and filed a worker's compensation report.[1] In May of 1988, Hall informed, Dan Lee, the president of Lee–Wright, via an office memorandum, that his injury would require surgery, that he would be admitted to the hospital on June 10, that he expected to be would be away for four to five days, and that he would then know how long he would be unable to work. Hall also telephoned Dan Lee on June 9, 1988, and reiterated what he had explained in the memorandum he sent in May.

Hall was admitted to the hospital from June 10, 1988, through June 13, 1988; then re-admitted on July 11, 1988, for three days; and was again re-admitted on July 18, 1988, for four days. It is undisputed that the only communications between the parties after June 9, 1988, was a letter dated July 14, 1988, informing Hall that his employment with Professional Flooring Supply Company had been terminated.

The jury was asked if Hall was discharged by Lee–Wright without good cause. If the jury answered yes to this question, it was then asked to determine what sum of money would reasonably compensate Hall for lost wages, if any, resulting from the discharge. The jury found that Hall had been discharged without good cause, and awarded $75,000 for past damages and $30,000 for future damages. After reducing the jury award by a stipulated credit of $3,500 and future damages to their present cash value, the trial court entered judgment for a total of $99,591.01.

## Jury charge

In its first point of error, Lee–Wright argues the trial court erred in entering judgment for damages in favor of Hall because the contract for employment was,

---

1. At trial, Hall also contended that he had been wrongfully discharged because he filed a worker's compensation claim. However, the jury found that he had not been terminated by reason of his having filed the worker's compensation claim. This jury finding is not contested in the instant appeal.

as a matter of law, terminable at will. Lee–Wright asserts, because no cause was required to terminate Hall's employment under the employment-at-will doctrine, the trial court erred in submitting a jury question regarding good cause.[2]

Submission of questions to the jury is a matter within the discretion of the trial court. *Ked–Wick Corp. v. Levinton*, 681 S.W.2d 851, 855 (Tex.App.—Houston [14th Dist.] 1984, no writ). The trial court's discretion is subject only to the requirement that the questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination. *Baker Marine Corp. v. Mosely*, 645 S.W.2d 486, 488–89 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); TEX.R.CIV.P. 277, 278.

Lee–Wright contends that Hall's employment contract contains no language requiring that termination be for good cause or language that otherwise limits the application of the employment-at-will doctrine. Lee–Wright argues the provision in the contract, which provides that the agreement "shall become void and null should Frank E. Hall leave the company," leaves the term of service to the discretion of Hall and allows Hall to terminate the contract at will and without liability. Accordingly, Lee–Wright asserts because Hall could terminate the contract at will, it also had the right to terminate the contract at will and without good cause. The preliminary issue then is whether Hall's employment relationship with Lee–Wright is controlled by the employment-at-will doctrine.

Texas has long adhered to the employment at will doctrine, which states that when the *term of service* is left to the discretion of either party, or the term is left indefinite, or determinable by either party, either may put an end the employment at will and without cause. *McClendon v. Ingersoll–Rand Co.*, 779 S.W.2d 69,

70 (Tex.1989); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (Tex. 1888). In the absence of special circumstances, however, Texas also follows the general rule in England, which dictates that a hiring at a stated sum per week, month, or year, is definite employment for the period named and may not be arbitrarily concluded. *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557, 561 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.).

A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee-at-will has the burden of proving an express agreement or written representation to that effect. *Totman v. Control Data Corp.*, 707 S.W.2d 739, 744 (Tex.App.—Fort Worth 1986, no writ). To establish a cause of action for wrongful termination, Hall was required to prove that (1) he and Lee–Wright had a contract that specifically provided that Lee–Wright did not have the right to terminate the employment contract at will, and that (2) the employment contract was in writing (if the contract is to exceed one year). *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 126 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). It has been held that the writing must, *"in a meaningful and special way,"* limit the employer's right to terminate the employment at will. *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex. App.—Beaumont 1987, writ ref'd n.r.e.) (emphasis in original). A hiring based on an agreement of an annual salary limits in a *meaningful and special way* the employer's prerogative to discharge the employee during the dictated period of employment. *Winograd v. Willis*, 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

The record is clear that Lee–Wright entered into a written contract to acquire

---

2. After Hall rested his case in chief, Lee Wright filed a motion for instructed verdict alleging that as a matter of law, the employment contract between the parties was terminable at will.

After the jury returned its verdict, Lee–Wright also filed a motion for judgment notwithstanding the verdict requesting the trial court to disregard the jury's verdict.

the assets of Hall's business. Lee–Wright was to take over the operations of Hall's business and acquire Hall's customer base in Houston. As part of the consideration for the purchase of the business, Lee–Wright also agreed to hire Hall as an employee. The employment provision of the contract provides the dates of employment, Hall's monthly compensation, and a stated term of employment of five years. A hiring at a stated sum per week, month, or year, is a definite employment for the period named and may not be arbitrarily concluded. *Dallas Hotel Co.,* 203 S.W.2d at 561. Thus, the contract between Hall and Lee–Wright limited in a *meaningful and special way* Lee–Wright's right to discharge Hall for the stated term of five years. Accordingly, the employment at will doctrine is inapplicable, and Lee–Wright was required to show good cause for terminating Hall's employment.

■ When the contract of employment is for a term, as opposed to "at will," the employer has the burden of showing good cause for the discharge. *Watts v. St. Mary's Hall,* 662 S.W.2d 55, 58 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Thus, the trial court properly submitted the question because (1) whether Hall was discharged without good cause controls the disposition of the case, (2) the question of whether Lee–Wright had good cause to terminate Hall is raised by the pleadings and the evidence, and (3) whether good cause existed was disputed and therefore required the jury's determination.

Lee Wright's first point of error is overruled.

In its sixth and seventh points of error, Lee–Wright argues the trial court erred in refusing its requested definition of good cause and requested jury question asking the jury to determine "whether [Hall] had substantially performed his employment duties at or prior to termination." The trial court submitted the following jury question and instruction:

> Was [Hall] discharged by [Lee–Wright] without good cause?

> Good cause means the employee's failure to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same of similar circumstances.

Lee–Wright objected to the failure of the trial court to include in its definition of good cause the failure or the inability of Hall to perform his duties. Lee–Wright requested the trial court to submit the following definition:

> [G]ood cause means the failure of an employee to perform his duties in the scope of his employment, or the inability of an employee to perform his duties in the scope of his employment, as an ordinary and prudent employee would do or would be able to do if employed in the same job.

Lee–Wright also requested the trial court to submit the following jury question:

> From June 10, 1988 through July 15, 1988, was [Hall] physically able to perform the usual duties of the branch manager of the Houston Branch of Professional Flooring Supply Co.?

■ The trial court is given broad discretion in determining the sufficiency of the instructions and definitions that it submits to jury. *K–Mart Corp. Store No. 7441 v. Trotte,* 677 S.W.2d 632, 636 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In deciding whether there has been an abuse of such discretion, this Court may not substitute its judgment for that of the trial court, and instead must decide only whether the trial court's action was arbitrary or unreasonable. *Id.*

The jury question and definition of good cause submitted by the trial court in the instant case was approved in *Dixie Glass Co. v. Pollak,* 341 S.W.2d 530, 541–42 (Tex. Civ.App.—Houston 1960, writ ref'd n.r.e.).[3]

---

**3.** In *Dixie,* the court considered the following jury question:

> Do you find from a preponderance of the evidence that Plaintiff, Harry H. Pollak, was

discharged by defendant on October 19, 1955, without good cause, as hereinafter defined? An employer may not discharge his employee during the period of employment agreed on except for good cause.

The issue in *Dixie* was whether the jury question as submitted presented a question of law or a question of fact. While the court in *Dixie* suggested that "it might have been better practice to submit the issue directly inquiring as to whether there was substantial performance, accompanied by a definition as to what constitutes substantial performance," the court held the question and accompanying instruction did not submit a question of law. *Id.* at 542. As the court stated:

> It really submitted to the jury the issue of fact as to whether the employee substantially performed the duties imposed upon him by his contract. If there was substantial performance of his contract, then there was not good cause for discharge by reason of failure to perform the contract.

*Id.*

Thus, under the authority of *Dixie*, the jury question submitted by the trial court merely submitted a different shade of the same question requested by Lee–Wright. The trial court is required to submit the controlling questions raised by the pleadings and the evidence, and once the controlling questions have been submitted, does not err in refusing to submit other questions and various phases or different shades of the same question. *Sinko v. City of San Antonio*, 702 S.W.2d 201, 208 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); Tex.R.Civ.P. 278. Therefore, while we reiterate the suggestion of the court in *Dixie*, we find the trial court's action in failing to submit the jury question requested by Lee–Wright was not arbitrary or unreasonable. *K–Mart Corp. Store No. 7441*, 677 S.W.2d at 636.

Lee–Wright's sixth and seventh points of error are overruled.

### Sufficiency of the evidence

In its second, third, fourth points of error, Lee–Wright argues that good cause was conclusively established because Hall "did not, and was unable to substantially

> You are instructed by the court that by the term good cause for discharge, as used in this charge, is meant a failure of the employee to perform those duties in the scope of his em-

perform his employment duties prior to and after the termination of his employment." In its fifth point of error, Lee–Wright argues the jury's finding that Hall was terminated without good cause is against the great weight and preponderance of the evidence.

### Standard of review

If an appellant is attacking the sufficiency of the evidence to support an adverse finding to an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982); *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ). In reviewing these "as a matter of law" points of error, we must first examine the record of evidence that supports the finding and ignore all evidence to the contrary. *Holley*, 629 S.W.2d at 696. If no evidence supports the jury's finding, only then do we look to see if the contrary proposition is established as a matter of law. *Id.*

If an appellant challenges the "factual sufficiency" of the evidence to support an adverse finding, we must consider and weigh all the evidence, both in support of and contrary to the challenged finding. In reviewing these "great weight" points of error, we must uphold the finding unless we decide the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 663 (Tex. 1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). The function of the jury, as the trier of fact, is to judge the credibility of the witnesses, assign the weight to be given their testimony, and resolve any conflicts or inconsistencies in the testimony. *Texas Employers' Ass'n v. Jackson*, 719 S.W.2d 245, 249–50 (Tex.App.—El Paso 1986, writ

> ployment as a man of ordinary prudence in an industry would have done under the same or similar circumstances.

ref'd n.r.e.). We will not substitute our judgment for that of the jury where the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Texas Employers' Ins. Ass'n v. Courtney*, 709 S.W.2d 382, 384 (Tex.App.—El Paso 1986, writ ref'd n.r.e.).

### Good cause

▮▮▮▮ The issue of whether an employer had good cause to discharge an employee is a question of a fact, unless the conduct involved and effect on the employer's business are clear, in which case it is a question of law. *Watts*, 662 S.W.2d at 58. Good cause for discharging an employee is defined as the employee's failure to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances. An employee's act constitutes good cause for discharge if it is inconsistent with the continued existence of the employer-employee relationship. *Dixie*, 341 S.W.2d at 541–43.

▮▮▮ Lee–Wright's contention that good cause was conclusively established because Hall "did not, and was unable to substantially perform his employment duties prior to and after the termination of his employment" is inconsistent with the agreement of the parties. As noted above, a review of the record shows that the contract did not set forth any specific employment duties that would be required of Hall as a condition to his being hired. Hall's employment was part of the contract reciting the consideration paid by Lee–Wright for the purchase of the business. James Lee testified he was aware that Hall wanted to retire in five years and that Hall would continue to receive his benefits under the contract "so long as he did not leave the company." Hall also testified the possibility that he might become disabled during the term of the contract was discussed and that the parties agreed that the only cause for terminating his employment would be if he "quit or left the company." This agreement between the parties is evidenced by

the modification to the employment provision that struck language that provided the agreement would become null and void "should [Hall] in anyway be unable to fulfill these job responsibilities." The record also shows that Lee–Wright was aware that Hall was injured on the job and that Hall would require surgery and a hospital stay. The record further shows that Hall was in and out of the hospital between June 10, 1988 and July 18, 1988. It is undisputed that the only communications between the parties after June 9, 1988, was a letter dated July 14, 1988 informing Hall that he had been discharged. Lee–Wright failed to sustain its burden of proving that Hall failed to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances.

We find that the evidence is both legally and factually sufficient to support the jury's finding that Hall was discharged without good cause.

Lee–Wright's second, third, and fourth points of error are overruled.

### Damages

In its eighth, ninth, tenth, and eleventh points of error, Lee–Wright challenges the legal and factual sufficiency of the evidence regarding the jury's finding of damages. The trial court submitted the following jury question and instruction regarding damages:

> What sum of money, if paid now in cash, would fairly and reasonably compensate [Hall] for his lost wages, if any, resulting from discharge?
> Do not include in your answer any amount that you find [Hall] could have avoided by the exercise of reasonable diligence to obtain other employment.

The jury awarded Hall $75,000 for past damages and $30,000 in future damages. Lee–Wright contends that the evidence shows that Hall failed to mitigate his damages by seeking other employment and, thus, was not entitled to the recovery "any damages."

▮▮▮▮ The general rule concerning mitigation of damages is applied in employ-

ment contracts by requiring a discharged employee to use reasonable diligence to seek other employment. *Gulf Consolidated Int'l, Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex.1983); *Professional Serv. Inc. v. Amaitis,* 592 S.W.2d 396, 397 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). A wrongfully discharged employee, however, is bound only to use reasonable diligence, and if no other employment could have been obtained by reasonable diligence, proof of that fact suffices to show the employee's duty has been fulfilled. *Kramer v. Wolf Cigar Stores Co.,* 91 S.W. 775, 777 (Tex.1906). Thus, the correct measure of damages for wrongful discharge of an employee is the present cash value of the contract if it had not been breached, less any amounts that the employee should in the exercise of reasonable diligence be able to earn through other employment. *Gulf Consolidated Int'l, Inc.,* 658 S.W.2d at 566; *Greater Fort Worth & Tarrant County Action Agency v. Mims,* 627 S.W.2d 149, 151 (Tex.1982).

 The uncontroverted evidence shows that if the contract had not been breached, Hall would have been entitled to $106,600 under the terms of the contract. The jury awarded $105,000. Hall testified that he did not seek other employment because of his age (Hall was 70 years of age at the time of trial) and because of his disability. The record shows that as a result of his injury, Hall was left 80% permanently disabled. Hall was bound only to use reasonable diligence in seeking other employment to mitigate his damages. Under the circumstances, Hall's age and disability, the jury could have reasonably concluded that no other employment could have been obtained by the use of reasonable diligence. The amount of damages awarded is uniquely within the jury's discretion. *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705, 707 (Tex.1970). We will not substitute our judgment for that of the jury where the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Courtney,* 709 S.W.2d at 384.

 Lee-Wright also asserts the trial court erred in not submitting a jury instruction that Hall had an affirmative duty to mitigate his damages. The court did instruct the jury not to include any damages that Hall could have avoided by the exercise of reasonable diligence. The law prohibits an injured party from recovering damages that could have been avoided or were incurred as a result of the failure to mitigate. *Alexander and Alexander v. Bacchus Indus.,* 754 S.W.2d 252, 253 (Tex.App.—El Paso 1988, writ denied). As noted above, the trial court is given broad discretion in determining the sufficiency of the instructions and definitions that it submits to the jury. *K-Mart Corp. Store No. 7441,* 677 S.W.2d at 636. The instruction is consistent with the law. Lee-Wright has failed to show how the trial court acted arbitrarily or unreasonably. Therefore, we will not substitute our judgment for that of the trial court.

Lee-Wright's eighth, ninth, tenth, and eleventh points of error are overruled.

Collateral source rule

In its twelfth point of error, Lee-Wright argues that trial court erred in ruling that evidence of workers' compensation benefits received by Hall was inadmissible under collateral source rule. Hall filed a motion in limine to prevent Lee-Wright from inquiring about workers' compensation payments received by Hall, which the trial court granted. At trial, and outside the presence of the jury, Hall testified that he had received monthly payments totaling $10,636 and a lump sum settlement of $50,000. Lee-Wright argues on appeal that it is entitled to an offset in damages by the amounts received by Hall. Lee-Wright contends that workers' compensation payments are not subject to the collateral source rule.

 The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured, and to which the wrongdoer was not privy. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 934 (Tex.1980). The concern that juries will factor in evidence of collat-

eral benefits when determining liability has historically been the leading reason for excluding such evidence. *Phillips v. Western Co. of North America*, 953 F.2d 923, 929 (5th Cir.1992). The relevancy of the evidence to the lawsuit is also an additional reason for excluding such evidence. *Id.* at 930. The application of the collateral source rule depends less upon the source of the funds than upon the character of the benefits received. *Id.* at 931; *Southern Pacific Transp. Co. v. Allen*, 525 S.W.2d 300, 306 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Medical insurance, disability insurance, and other forms of protection purchased by a plaintiff, as well as gifts a plaintiff receives are easily identifiable as "independent" sources of income that are subject to the collateral source rule. *Phillips*, 953 F.2d at 930–31. It has also been held that workers' compensation, which is paid by an employer, may not diminish recovery when the injured worker sues the tortfeasor. *See Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1168 (5th Cir. 1990).[4]

In the instant case, the workers' compensation benefits Hall received do not provided a basis for Lee–Wright's assertion that Hall is receiving a double recovery. Workers' compensation benefits compensate an employee for loss of earning capacity caused by a work-related injury. Thus, evidence of these collateral benefits has no relevance to the breach of contract claim that is the subject of this lawsuit. The fact that Hall received compensation for his work-related injury is not relevant to the issue in this case: whether Lee–Wright discharged Hall without good cause.[5] Knowledge that Hall received these benefits would have undoubtedly drawn the jury's attention from its task of making this determination and allocating appropriate damages, if any. We, therefore, hold that Lee–Wright is not entitled to a setoff for the benefits received by Hall. The

evidence that Hall received such benefits was properly excluded by the trial court under the collateral source rule.

Lee–Wright's twelfth point of error is overruled.

The judgment is affirmed.

---

4. Because the injured worker normally cannot sue his employer in tort, workers' compensation benefits usually derive from a source collateral to the tortfeasor. *Phillips*, 953 F.2d at 931 n. 9.

5. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Civ.Evid. 401.