In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-217 CV


____________________



BOBBY G. WOOD, JR., Appellant



V.



RESERVE FIRST PARTNERS, LTD. d/b/a FIRST FIDELITY RESERVE 


and 1st CAPITAL RESERVE, L.P., Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. A-174,569-A






MEMORANDUM OPINION


 Bobby G. Wood, Jr. appeals the trial court's order granting summary judgment
regarding the enforceability of a covenant not to compete in favor of appellee Reserve First
Partners, Ltd. d/b/a First Fidelity Reserve and 1st Capital Reserve (hereinafter "1st Capital"). 
We affirm.


Background

 On May 20, 2003, 1st Capital and Wood executed a Confidential Services, Trade
Secret, and Employment Agreement. 1st Capital agreed to employ Wood on an "at-will"
basis and to provide Wood with training and access to its proprietary information and trade
secrets in exchange for Wood's covenant not to compete and his agreement to perform
certain sales functions. Wood agreed that during the term of the agreement he would not
engage in any business, calling, or enterprises that might be contrary to the interest or benefit
of 1st Capital. The agreement also provided that 1st Capital would be entitled to damages
if Wood disclosed any confidential information obtained from 1st Capital or competed with
1st Capital during or within three years after termination of his employment with 1st Capital. 
The agreement stated it takes approximately two years of training for an employee to become
a qualified sales person, and that the training includes immediate disclosure and development
of certain client records. 

 On May 11, 2004, 1st Capital and Wood executed an Amendment to Confidential
Services, Trade Secret and Employment Agreement. The amendment incorporated the terms
of the original agreement and stated the following:

 WHEREAS, in addition to [1st Capital's] disclosure of trade secrets and
other confidential information to [Wood], in exchange, and ancillary to,
[Wood]'s willingness to keep said information confidential and not engage in
certain conduct post-employment, [1st Capital] and [Wood] desire to amend
and modify [Wood]'s "at-will" employment status with [1st Capital], and
provide for this Amendment to be an enforceable agreement which is ancillary
to the provisions contained in [the paragraphs entitled "Unauthorized
Competition Prohibited" and "Enforcement of Restrictive Covenants"] of the
Confidential Services, Trade Secrets, and Employment Agreement, and certain
other provisions of the Agreement in the manner hereinafter set forth[.] 


The amendment provided that 1st Capital could only terminate Wood "for cause," and that
the term of their association would begin on the date the amendment was executed and would
ultimately be automatically renewed for successive one-year periods unless one of the parties
gave notice. We refer to the May 20, 2003, agreement and its May 11, 2004, amendment
collectively as "the amended agreement."

 On February 21, 2005, Wood resigned his position with 1st Capital. Wood shortly
thereafter accepted a job with Pinnacle Coin Reserve. Based on information from 1st
Capital's customers, 1st Capital filed a petition in intervention and an application for
injunctive relief seeking damages, a temporary injunction, and a permanent injunction against
Wood for violating the covenant not to compete with 1st Capital. (1) The trial court granted 1st
Capital's application for temporary injunction. 1st Capital filed a motion for partial summary
judgment regarding the enforceability of the covenant not to compete and asserted Wood
breached the agreement when he became associated with Pinnacle Coin Reserve and began
directly competing with 1st Capital. Woods appealed the order granting 1st Capital's partial
summary judgment motion. 1st Capital and Wood signed an agreed order to sever the partial
summary judgment, making the order final and appealable. (2) 

Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only when the
movant establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The motion must state the
specific grounds relied upon for summary judgment. Id. In reviewing a traditional summary
judgment, we must indulge every reasonable inference in favor of the nonmovant, take all
evidence favorable to the nonmovant as true, and resolve any doubts in favor of the
nonmovant. Valence Operating Co., 164 S.W.3d at 661.

Issues on Appeal

 Wood raises fourteen issues on appeal. The first twelve issues address the trial court's
order granting 1st Capital's partial summary judgment motion on the enforceability of the
covenant not to compete; the last two issues address a prior order granting 1st Capital's
application for temporary injunction against Wood. 

Order Granting 1st Capital Partial Summary Judgment

 We first address Wood's issues that challenge the trial court's order granting 1st
Capital partial summary judgment on the enforceability of the covenant not to compete. 
Wood's first issue states the trial court erred in granting 1st Capital's motion for partial
summary judgment. In his second issue, he asserts the trial court abused its discretion in
deciding that no fact issues existed. In issues three, four, six, eight, ten, eleven, and twelve,
Wood argues the original and amended agreements lack consideration. Specifically, these
issues assert that there was no evidence of consideration to consummate the non-compete
contract between the parties; the consideration given by 1st Capital did not give rise to 1st
Capital's interests in restraining Wood from competing; no consideration passed to Wood
for signing the amended agreement, the consideration offered by 1st Capital was illusory and
did not satisfy the requirements of new consideration for the covenant not to compete; 1st
Capital offered no consideration in exchange for the covenant not to compete, there was no
performance by 1st Capital that constituted a fulfillment of its illusory promise, and 1st
Capital obtained Wood's covenant not to compete without any new consideration. Wood
contends in issues five and seven that the covenant not to compete was unenforceable under
section 15.50(a) of the Texas Business and Commerce Code. See Tex. Bus. & Com. Code
Ann. § 15.50(a) (Vernon 2002). Wood maintains in issue nine that the dealings between
Wood and 1st Capital did not rise to the level of a unilateral contract because the dealings
between the parties remained executory. 

 Whether a covenant not to compete is enforceable is a question of law. Light v. Centel
Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994). The Covenants Not to Compete Act
states:

 [A] covenant not to compete is enforceable if it is ancillary to or
part of an otherwise enforceable agreement at the time the
agreement is made to the extent that it contains limitations as to
time, geographical area, and scope of activity to be restrained
that are reasonable and do not impose a greater restraint than is
necessary to protect the goodwill or other business interest of
the promisee.


Tex. Bus. & Com. Code Ann. § 15.50(a) (Vernon 2002).

 We must first determine whether the parties entered into an "otherwise enforceable
agreement" when the non-compete agreement was made. See id. Wood asserts the amended
employment agreement contained illusory promises as consideration for Wood's execution
of the amended agreement not to compete. It is true that an "otherwise enforceable"
agreement "'can emanate from at-will employment so long as the consideration for any
promise is not illusory.'" Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644,
648 (Tex. 2006) (quoting Light, 883 S.W.2d at 645). However, the amended agreement
provided that 1st Capital could only terminate Wood "for cause." (3)
 Thus, the employment
relationship was not at will, and the promises were not illusory because 1st Capital contracted
to only terminate Wood "for cause." See C.S.C.S., Inc. v. Carter, 129 S.W.3d 584, 592 n.3
(Tex. App.--Dallas 2003, no pet.) (citing Light, 883 S.W.2d at 644-45 n.5).

 Having concluded there was an otherwise enforceable agreement between Wood and
1st Capital, we must next address whether the covenant not to compete was ancillary to or
part of the otherwise enforceable agreement. See Alex Sheshunoff Mgmt. Servs., 209 S.W.3d
at 649. For a covenant not to compete to be "ancillary to or part of" an enforceable
agreement, "'(1) the consideration given by the employer in the otherwise enforceable
agreement must give rise to the employer's interest in restraining the employee from
competing; and (2) the covenant must be designed to enforce the employee's consideration
or return promise in the otherwise enforceable agreement.'" Id. (quoting Light, 883 S.W.2d
at 647). 

 Wood contends the promises made by 1st Capital did not give rise to the employer's
interest in restraining him from competing, and that the record does not disclose that he
received confidential information or specialized training under the agreement. The record
shows that 1st Capital provided specialized training and confidential information to Wood
both before and after he signed the amended agreement. Therefore, Light's two-pronged test
is met. See Light, 883 S.W.2d at 647. The consideration given by 1st Capital to Woods
consisted of customer information and trade secrets, giving rise to 1st Capital's interest in
restraining Wood from competing. The covenant was designed to enforce Wood's return
promise not to disclose such information or to compete with 1st Capital. See, e.g., Curtis v.
Ziff Energy Group, Ltd., 12 S.W.3d 114, 118 (Tex. App.--Houston [14th Dist.] 1999, no pet.)
(finding employer's consideration gave rise to its interest in restraining employee from
competing, and non-compete covenant was designed to enforce employee's consideration not
to disclose or use the confidential information or trade secrets after employment); Evan's
World Travel, Inc. v. Adams, 978 S.W.2d 225, 232 (Tex. App.--Texarkana 1998, no pet.)
(finding consideration given by employer to employee in the form of customer information
gave rise to employer's interest in restraining employee from competing and covenant was
designed to enforce employee's return promise to not disclose such information or to
compete with employer; thus, covenant not to compete was ancillary to an otherwise
enforceable agreement); Ireland v. Franklin, 950 S.W.2d 155, 158 (Tex. App.--San Antonio
1997, no writ) (holding consideration supported a covenant not to compete when employer
promised to share certain trade secrets with employee, who, in turn, promised not to disclose
or use trade secrets during or after termination of employment). Here, the covenant not to
compete was ancillary to or part of the otherwise enforceable agreement. See Tex. Bus. &
Com. Code Ann. § 15.50(a).

 As for section 15.50(a)'s requirement that the non-compete covenant contain
reasonable limitations as to time, geographical area, and scope of activity to be restrained,
Wood does not argue on appeal that the non-compete covenant's limitations are
unreasonable. He did not assert such an argument in his response to 1st Capital's motion for
partial summary judgment. Wood stipulated to the reasonableness of the limitations when
he signed the amended agreement that included the covenant not to compete, and he testified
that he agreed to the restrictions when 1st Capital employed him. Wood and 1st Capital
entered into a bilateral agreement supported by consideration, and the covenant not to
compete included as part of the amended agreement is enforceable under section 15.50(a). 
See id.

 In Wood's second issue, he claims the trial court abused its discretion in deciding that
no fact issues existed and that 1st Capital was entitled to a partial summary judgment as a
matter of law. Wood's affidavit attached to his response to 1st Capital's partial summary
judgment motion merely concludes that 1st Capital would have terminated his employment
had he refused to sign the amended agreement, and that he was not given confidential
information other than what he had already been given by 1st Capital. Wood's summary
judgment evidence, however, provides no facts supporting his contention that he signed the
amended agreement under duress. He also testified that after he signed the amended
agreement, he continued to have access to 1st Capital's customer databases while he worked
there, and he recorded specific information regarding other 1st Capital salesmen's customers
on a daily basis. 1st Capital established that there were no genuine issues of material fact and
it was entitled to summary judgment as a matter of law. We overrule Wood's first twelve
issues.

Order Granting 1st Capital's Application for Temporary Injunction 


 In issues thirteen and fourteen, Wood contends the trial court abused its discretion by
granting the temporary injunction because of the lack of evidence that any damages that
might be awarded were uncollectible from him as well as the lack of proof of the common
law prerequisites for issuance of a temporary injunction. The issuance of the permanent
injunction, as part of the trial court' s order granting 1st Capital's motion for partial summary
judgment, rendered the issuance of the temporary injunction moot. See Isuani v. Manske-Sheffield Radiology Group, P.A., 802 S.W.2d 235, 236 (Tex. 1991). Wood may not
challenge the propriety of the temporary injunction order in this appeal. See id. We overrule
issues thirteen and fourteen.



Conclusion

 Having overruled all of Wood's issues, we affirm the trial court's judgment granting
1st Capital's motion for partial summary judgment regarding the enforceability of the
covenant not to compete. 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on March 22, 2007

Opinion Delivered August 2, 2007



Before McKeithen, C.J., Kreger and Horton, JJ.
1. The original lawsuit was styled "Reserve First Partners, Ltd., d/b/a First Fidelity
Reserve v. Marcus Meehan and Pinnacle Coin Reserve." 
2. Although the severed claim before this Court is cause no. A-174,569-A in the
trial court, the agreed severance order refers to the severed claim as cause no. E-174,569-A.
3. In Texas, employment is presumed to be at will, that is, it is terminable by either
party for good cause, bad cause or no cause at all. Montgomery County Hosp. Dist. v.
Brown, 965 S.W.2d 501, 502 (Tex. 1998). To alter this presumption, a writing must, "in
a meaningful and special way," limit the employer's right to terminate the employment at
will. Lee-Wright, Inc. v. Hall, 840 S.W.2d 572, 577 (Tex. App.--Houston [1st Dist.]
1992, no writ) (citing Benoit v. Polysar Gulf Coast, Inc., 728 S.W.2d 403, 406 (Tex.
App.--Beaumont 1987, writ ref'd n.r.e.)). In such an employment contract, the employer
must unequivocally indicate a definite intent to be bound not to terminate the employee
except under clearly specified circumstances. Brown, 965 S.W.2d at 502. The amended
agreement here stated that "the association formed by this Agreement may be canceled
and terminated at any time by [1st Capital] for Cause" and then specifically defined the
circumstances in which 1st Capital could terminate Wood.