

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00243-CV

———————————————

L.O.D.C. GROUP, LTD., D/B/A LILY OF THE DESERT NUTRACEUTICALS, AND L.O.D.C., INC., D/B/A LILY OF THE DESERT, Appellants

V.

ALMA LOPEZ, Appellee

---

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 18-3350-393

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Alma Lopez was hired by L.O.D.C Group Ltd. d/b/a Lily of the Desert Nutraceuticals (Lily) for a minimum employment term of three years. However, Lily dismissed Lopez before the end of the term, and she sued for breach of contract. The case was tried to a jury, which found that Lily breached the contract and that it did not have good cause to dismiss Lopez.

Raising three issues on appeal, Lily complains that (1) the offer letter on which Lopez based her claim was not an enforceable contract, (2) the evidence was insufficient to support the jury's finding that it breached the contract, and (3) the evidence was insufficient to support the jury's finding that it did not have good cause to dismiss Lopez. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Lily interviewed Lopez for the position of its Senior Vice President of Supply Chain. The position was offered to Lopez, and she negotiated with Lily's Chief Operating Officer (COO) for the specific terms of her employment.

On May 12, 2017, Lopez and the COO signed an offer letter, which contained various details of Lopez's position: title, supervisor, start date, salary, bonuses, relocation package, company benefits, and a three-year contract term. The letter further specified that if Lily dismissed Lopez prior to the end of the three-year term, then it promised to pay Lopez any salary and benefits remaining on the contract,

unless her dismissal was "based on violation of company policies." However, the letter did not contain her job responsibilities or Lily's company policies. Four days later, Lopez also signed an employee acknowledgment form, which included specific grounds for dismissal, including deliberate falsification of records, insubordination, poor performance, etc.

Lopez began working for Lily in June 2017, and although she did not receive a written document detailing her job duties, she successfully negotiated several favorable contracts for the company. Yet, on March 9, 2018, Lopez received an email from the COO with a "warning for job performance." The warning notice was for an incident that occurred three days prior, when multiple products were found to be missing work orders or to have incorrect dates assigned to them in the company's production software. Before this email, Lopez was unaware of any concerns regarding her performance. Several days later, the COO sent another email to Lopez, explaining that he was deeply concerned that her production schedule which was different from previous schedules.

On March 19, 2018, Lopez was called into a meeting with the COO, and he told her that Lily wished to terminate her employment. Lopez sued Lily and L.O.D.C. Inc.[1] for breaching the contract, and a trial commenced in July 2023.[2]

---

[1]Lopez originally filed her suit against two companies: L.O.D.C. Group, Ltd., d/b/a/ Lily of the Desert Nutraceuticals and L.O.D.C., Inc., d/b/a Lily of the Desert. All references to "Lily" are in reference to L.O.D.C Group, Ltd.—not L.O.D.C., Inc.

At trial, Lily presented affidavits from the COO and other executives that outlined its performance issues with Lopez. Specifically, it claimed that (1) Lopez deliberately falsified production schedules on an Excel file that did not match the company's production software (allegedly to hide her mistakes), (2) she engaged in insubordination by failing to follow the COO's directive to not schedule any production on weekends, and (3) she failed to order sufficient inventory for timely production.

In response, Lopez denied falsifying company documents, claimed that the Excel schedules were often used by the production staff to draft proposed schedules, and contended that the corporate software was not updated because the schedule had not been finalized. As for insubordination, Lopez claimed that in her prior communication with the COO, he did not tell her that weekend production was "off the table." Regarding insufficient inventory, Lopez contended that the potential shortage was because Lily had not determined how much product it needed until late in the process and that the apparent shortage was due to discrepancies in the corporate software. Lopez explained that before her dismissal, besides the COO's March 9th email warning about her job performance, she never received any oral or written warnings nor was she ever placed on probation.

---

[2]Prior to trial, Lily filed a no-evidence motion for summary judgment and a traditional motion for summary judgment. A pretrial hearing was conducted, and Lily argued that no valid contract existed because it lacked consideration and mutual assent. The trial court denied both motions.

At the close of trial, contending that the offer letter was not an enforceable contract because there was no evidence of consideration or mutual assent, Lily moved for a directed verdict on Lopez's breach of contract claim.[3]  The trial court denied Lily's motion.  The jury found that (1) Lily breached the offer letter and that (2) Lily did not have good cause to dismiss Lopez.

The trial court signed the judgment reflecting the jury's verdict, and Lily filed a motion to modify, correct, or reform the judgment and for judgment notwithstanding the verdict.  Again, Lily argued that the offer letter was not an enforceable contract because it was not supported by consideration and lacked essential terms, namely the parties' duties and responsibilities.  Lily also filed a motion for new trial in which it argued that the evidence was legally and factually insufficient to support the jury's finding that it breached the offer letter and that it did not have good cause to dismiss Lopez.  Both of Lily's post-trial motions were overruled, and this appeal followed.

## III.  STANDARD OF REVIEW

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere

---

[3]Arguing that there was no evidence that it employed Lopez, L.O.D.C. Inc. also moved for a directed verdict, and the trial granted the motion.

scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We must first examine the record for evidence that supports the finding, while ignoring contrary evidence, unless the contrary evidence is conclusive. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658.

In reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding and order a new trial only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust, shock the conscious, or clearly demonstrate bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

6

In performing evidentiary-sufficiency reviews, we must be mindful that the fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex. 1986); *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 199, 205 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The fact-finder is responsible for resolving conflicts in the evidence, and it may believe one witness and disbelieve another. *McGalliard*, 722 S.W.2d at 697. We may not reweigh the evidence and set aside a finding merely because we are of the opinion that a different result is more reasonable. *Pool*, 715 S.W.2d at 634.

## IV. DISCUSSION

### A. ENFORCEABLE CONTRACT

In its first issue, Lily argues that Lopez's offer letter is not an enforceable contract because essential terms are missing or indefinite. We disagree.

### 1. Standard of Review and Applicable Law

To prevail on a breach of contract claim, a plaintiff must prove that: (1) a valid contract exists; (2) the plaintiff performed as contractually required; (3) the defendant breached the contract by failing to perform as contractually required; and (4) damages. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

"The question of whether a contract contains all the essential terms for it to be enforceable is a question of law." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see Playoff Corp. v.*

7

*Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied) ("Whether an agreement fails for indefiniteness is a question of law to be determined by the court."). Questions of law are reviewed de novo. *Tex. Dep't of Pub. Safety v. Torres*, 54 S.W.3d 438, 440 (Tex. App.—Fort Worth 2001, no pet.).

The elements of an enforceable contract are (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it become mutual and binding on both parties; and (6) consideration. *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.—Tyler 2013, no pet.). In the context of employment agreements, typical essential terms include, among others, "compensation, duties or responsibilities." *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex. 1990).

With these elements in mind, the legal obligations and liabilities of the parties must be sufficiently definite. *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793 (Tex. App.—Dallas 2007, no pet.). "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Contract terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) of Contracts § 33(2) (1981). Thus, a contract is sufficiently definite if a court is able to determine the respective

legal obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

"[P]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 240 (Tex. 2016). The law favors finding agreements sufficiently definite for enforcement, particularly where one of the parties has performed his part of the contract. *Id.*

### 2. Material Terms and Definiteness

Lily maintains that the offer letter, without the inclusion of (1) Lopez's duties and (2) Lily's company polices, is not an enforceable contract because it is too indefinite.

We first address the offer letter's lack of specificity for Lopez's duties. While the offer letter does not outline the responsibilities of her position, it contains other pertinent information: title, supervisor, salary, bonuses, term, and start date. The definiteness regarding Lopez's duties is evidenced by each party's performance after entering into the agreement. Following her acceptance of the position, Lopez began performing under the offer letter's terms, working as the Senior Vice President of Supply Chain by negotiating contracts and managing inventory on behalf of the company, and Lily began paying Lopez for this performance. The parties' conduct indicates that both Lily and Lopez understood the duties and responsibilities under the agreement—for nearly ten months, Lopez performed, and Lily paid.

9

Lily cites several cases where contracts have been found unenforceable due to indefiniteness; however, those cases are distinguishable from this appeal because Lily and Lopez's offer letter was neither oral nor contemplated a future agreement. *See Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin.*, L.P., 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied) (discussing a letter of intent that detailed the management role that would be drafted in the future); *see also Frazin*, 230 S.W.3d at 794 (holding that an oral agreement for undefined services was too indefinite).

In looking at the circumstances surrounding the offer letter, along with its specific terms and the parties' behavior after entering into the agreement, we conclude that Lily and Lopez understood their obligations. While the offer letter did not articulate the specific day-to-day details of Lopez's duties as a Senior Vice President of Supply Chain, the evidence shows that the offer letter signified the parties' final understanding of her role, as well as the terms Lily was willing to meet to secure her employment. Their performance under the agreement removed the uncertainty, if any, regarding Lopez's duties under the offer letter. *See Smith v. Barnhart*, 576 S.W.3d 407, 417 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

We next address the absence of Lily's company policies in the offer letter. Lily maintains that because its company policies are not contained within the offer letter, there is no way to determine if the parties fulfilled their obligations.

In the plain reading of the offer letter, it is clear that Lily is excused from Lopez's three-year salary guarantee if it dismissed her based on a violation of

10

company policy. Lopez testified that she understood what was expected of her, and she knew that she would be accountable if she violated the policies.[4] Here, Lopez was aware that she could be dismissed if she breached Lily's company policies, and this understanding afforded Lily with an appropriate remedy for such a breach. *See Fischer*, 479 S.W.3d at 240.

The fact that the letter does not specify the company policies to be used as a basis for an excused dismissal does not make the offer letter's terms too indefinite to permit a fact finder to determine if a party breached the agreement.[5] *See Playoff Corp.*, 300 S.W.3d at 455. We conclude that the evidence demonstrates that Lopez and Lily

---

[4]Lopez acknowledged that when she signed the offer letter, she agreed to follow Lily's company policies. She "imagined" the policies were in the company's employee handbook, which she never received. Lopez explained that she was familiar with typical policies and procedures governing corporations, and, as a result, she did not believe she needed to read all the details of the handbook.

[5]Lily has cited no authority for the proposition that an employment contract must specifically contain the company's policies listing the grounds for dismissal or else it is too indefinite.

Lily's brief alleges that there is no basis for deciding whether the agreement was broken and asks, "[w]hat are Lily's company policies?" Yet, Lily offered its company policies at trial through defense exhibit eight. Evidently, Lily was aware of its own company policies, and Lopez has not disputed the validity of the policies that she was subjected to under the agreement. Here, the offer letter's reference to "company policies" was not an abstract allusion to a non-existent document. Lily had company policies that outlined the bases for employee violations. *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968) (stating that an unsigned document may be incorporated by reference into a signed document if the signed document expressly refers to the unsigned document and that the language used to incorporate the other document is not important provided that the signed document plainly refers to the other document).

11

negotiated their agreement in the offer letter and that the parties' subsequent performance provides a basis for determining the existence of a breach and for giving an appropriate remedy. *Id.*; *see Fischer*, 479 S.W.3d at 240. We hold that the letter is sufficiently definite to constitute a binding contract for employment, and we overrule Lily's first issue.[6]

## B. SUFFICIENCY FOR FINDING OF "BREACH"

In its second issue, Lily contends that there is legally and factually insufficient evidence to support the jury's finding that it breached the contract with Lopez. We disagree.

### 1. Legal Sufficiency for Lily's Breach

Lily maintains that there is no evidence to support the jury's finding that it breached the contract because Lopez's dismissal was based on violations of company policies.

The relevant portion of the contract reads, "[t]his offer is for a minimum employment contract of 3 years with any remaining compensation guaranteed upon dismissal (except for dismissal based upon a violation of company policies)." Lily agreed that if it dismissed Lopez before three years, it must pay her the remaining compensation in the three-year term unless Lopez's dismissal was based on a violation of company policies.

---

[6]Having found that it is an enforceable contract, we will subsequently use "contract" in reference to the offer letter.

Lily argues that it did not breach the contract because Lopez's dismissal was based on violations of company policies. In support of its argument, Lily presented at trial a document that memorialized Lopez's performance and conduct as an employee. The report included notes from senior leadership and outlined three grounds for Lopez's dismissal: (1) deliberate falsification of records, (2) insubordination or other disrespectful conduct, and (3) unsatisfactory performance or conduct. Lily contends that because Lopez's dismissal was *based on* company policy violations, it provided sufficient reason for her early dismissal and was not obligated to pay any remaining compensation.[7]

Applying the legal sufficiency standard of review, however, we begin by examining the evidence that supports the jury's "yes" answer to question one—we do not consider the evidence pointed to by Lily as contrary to the jury's "yes" answer to question one. *See Dow Chem. Co.*, 46 S.W.3d at 241. We credit all evidence favorable to the jury's "yes" answer if a reasonable fact-finder could, and we disregard evidence that is contrary to the jury's "yes" answer unless a reasonable fact-finder could not.

---

[7]Lily attempts to have this court construe "based on" to mean that Lily could simply allege any company policy violation—irrespective of its veracity or legitimacy—as grounds for Lopez's dismissal. Essentially, Lily argues that so long as it asserts that Lopez violated company policy, it is not required to prove that she actually violated the policy to be dismissed. We are unpersuaded by this argument. Such an interpretation would essentially frustrate the purpose of the clause. If Lily's interpretation is to be followed, then Lily could dismiss an employee for any reason by merely claiming that a policy was violated—even if the claim was entirely baseless.

*See City of Keller*, 168 S.W.3d at 827.[8]  Lily argues that, applying this standard, the evidence is "so weak as to do no more than create a mere surmise or suspicion that the fact exists."

Lopez disavowed all of Lily's claims, and she testified that she did not falsify corporate records and that her performance was neither insubordinate nor unsatisfactory.  We will address each of Lily's bases for dismissal against Lopez's evidence.

In its first basis for dismissal, Lily claimed that Lopez deliberately falsified corporate records.  Under Lily's employee manual, the "deliberate falsification of records" is a ground for immediate dismissal without any warning.  Lily claimed that in an effort to mask her inability to keep the corporate software updated with accurate information, Lopez manipulated data in an Excel spreadsheet before sending out a "final" schedule.  Lopez provided a different explanation.

Lopez denied that she deliberately falsified a company document when she drafted the schedule.  Rather, she created a proposed schedule based on updated

---

[8]Lily asserts that *City of Keller* requires us to use an inclusive standard of review and consider not only the evidence that supports the jury's finding but all evidence. However, *City of Keller* addressed an appellate court's need to use an inclusive standard and consider consciousness evidence in employment **discrimination cases**.  *Id.* at 818.  Here, Lopez's suit is not for discrimination.  Further, "[w]hether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."  *Id.* at 827.

14

information. This updated information caused Lopez to make additional changes to the production schedule that she and the COO had previously discussed and worked on. Lopez explained that it was not uncommon for Lily to keep production schedules in the corporate software, Microsoft Word, and Excel and that these schedules often did not match. Lopez further testified that it was also "common practice" for her team to rely on Excel spreadsheets when drafting proposed schedules. Despite Lily's allegations of deliberate falsification, Lopez wholly denied going into the corporate software to change orders to mask any type of failure in her performance.

Lily next asserted that it dismissed Lopez because she was insubordinate. Lily explained that Lopez disobeyed the COO's instructions to not schedule any production on weekends. Lopez addressed this claim in two parts. First, she explained that she did not disobey the COO's directive; she merely proposed an alternative schedule—which did include weekend production—to respond to new circumstances of a possible production shortage. Second, Lopez explained that in her communications with the COO, he never expressly told her that she could not include weekends in the production schedule; rather, he told her that they had not discussed production runs on the weekend.

Finally, Lily contended that Lopez's performance was unsatisfactory because, in addition to failing to update corporate software, she did not properly oversee the production process by ensuring that there was sufficient inventory. In response, Lopez testified that the disorganization was not her fault but the result of ongoing

15

issues with Lily's production software. Lopez also explained that other employees had entered incorrect numbers into the software, which impacted production. Despite its claim that Lopez underperformed, Lily's CEO testified at trial that Lily did not lose any customers and that it ultimately did not have a production shortage.

The jury was free to believe Lopez's testimony regarding the nature of her performance and disregard the sincerity of Lily's complaints, and we defer to the jury's credibility determinations. *See McGalliard*, 722 S.W.2d at 696–97; *Nwokedi*, 428 S.W.3d at 199. The jury could have determined that no specific act by Lopez constituted a violation of Lily's company policies and that Lily's proffered reasons were merely a pretext for her dismissal.

Citing to *Moon v. Star-Telegram Operating, Ltd.*, Lily contends that Lopez not only had to prove that her dismissal was based upon false reasons, but she also had to prove the "real reasons" for her dismissal. No. 2-06-149-CV, 2007 WL 2460256, at *4 (Tex. App.—Fort Worth Aug. 31, 2007) (mem. op.). Lily's reliance on *Moon* is misplaced. *Moon* dealt with an at-will employee's claim for wrongful termination—not a claim for breach of contract. *Id.* We held in *Moon* that an at-will employee was required to show that the reason given by the employer was false, as well as allege the real, illegal reason for his termination. *Id. Moon*'s holding was based on a suit for wrongful termination, which required the employee to show that his termination was for an illegal reason. *Id.* Here, there is no such requirement. Lopez's employment was for a term, not at-will, and her claim is for breach of contract. Thus, she is not

16

required to prove the real reason for her dismissal—only that she did not violate Lily's company policies.

We conclude that the evidence, when viewed in a light most favorable to the jury's verdict, provides more than a scintilla of support for a finding that Lopez did not violate company policies and that Lily breached the contract when it dismissed her. *See City of Keller*, 168 S.W.3d at 810, 819–22. The evidence is therefore legally sufficient to support the jury's "yes" answer to question one. *See Dow Chem. Co.*, 46 S.W.3d at 241.

## 2. Factual Sufficiency for Lily's Breach

Lily also raises a factual sufficiency challenge, claiming that the jury's finding of a breach was contrary to the great weight and preponderance of the evidence. *See Pool*, 715 S.W.2d at 635.

In applying the factual sufficiency standard of review, and considering all of the evidence of a breach, we again defer to the jury's resolution of weight and credibility determinations. *See McGalliard*, 722 S.W.2d at 696–97; *see also Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("This court is not a fact-finder . . . . We may not, therefore, pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result."). And although there is evidence in the record that would support a finding that Lopez violated company policies and that Lily did not breach the contract, evidence also exists that supports the jury's finding that Lopez

17

did not violate company policies and that Lily had no basis to dismiss her. *See Vigil v. Kirkland*, No. 02-16-00147-CV, 2017 WL 2471091, at *4 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op.).

Lily points to "the laundry list of incidents" that conclusively establish that Lopez violated company policies. However, Lopez also introduced evidence that challenged the veracity of Lily's complaints. Lopez provided explanations and justifications for each of Lily's alleged bases for her dismissal.

In our review of the entire record, we hold that the jury's "yes" answer to question one is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we overrule Lily's second issue.

### C. SUFFICIENCY FOR FINDING OF "NO GOOD CAUSE"

In its third and final issue, Lily asserts that the evidence is legally and factually insufficient to support the jury's finding that it did not have "good cause" to dismiss Lopez. For much of the same reasons from our discussion of Lily's breach, we disagree. Both parties incorporate and reiterate many corresponding facts and arguments from Lily's second issue.

### 1. Legal Sufficiency for No Good Cause

Lily contends that it had good cause to discharge Lopez because she failed to perform the duties in the scope of her employment that a person of ordinary prudence would have done under similar circumstances.

18

When an employment contract is for a term, as opposed to "at will," the "employer has the burden of showing good cause for the discharge." *See Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 578 (Tex. App.—Houston [1st Dist.] 1992, no writ). Whether "an employer had good cause to discharge an employee is a question of fact, unless the conduct involved and effect on the employer's business are clear, in which case it is a question of law." *Id.*

Here, Lopez's contract was for a specific term of three years. Thus, the inquiry is whether Lily had good cause to dismiss her. An employer has good cause to discharge an employee if the employee "fail[s] to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances." *Id.* at 580. An employer also has good cause to discharge an employee if the employee's act "is inconsistent with the continued existence of the employer-employee relationship." *Id.*

Lily argues that the overwhelming evidence proved that "Lopez did not perform her job to Lily's expectations." But again, we look at the evidence that supports the jury's finding while ignoring evidence to the contrary, unless the contrary evidence is conclusive. *City of Keller*, 168 S.W.3d at 807; *Dow Chem.*, 46 S.W.3d at 241.

Lopez testified that the Excel spreadsheet was only a proposed schedule and that Lily commonly used Excel to draft proposed schedules before updating it in the corporate software. The jury could have believed Lopez and concluded that Lily's claim that Lopez deliberately falsified corporate documentation was unfounded and

19

that Lopez was acting as any other prudent employee in her situation would have done by updating a proposed schedule manually in an Excel spreadsheet. *See Lee-Wright*, 840 S.W.2d at 578–79. The jury could have further believed that, although there were discrepancies between the corporate software and Excel spreadsheet, Lopez did not intentionally manipulate or falsify records to cover up alleged mistakes. Likewise, the jury could have found that Lopez was not insubordinate and acted as any other prudent employee by updating the production schedule in response to new information and circumstances. Further, the jury could have found that the COO's statements about weekend production were not a directive and that Lopez was not insubordinate when she scheduled production for weekends. Regarding production output concerns, the jury could have determined that the issues were caused by confusion and problems with the corporate software and not by Lopez's underperformance. With respect to whether Lopez's actions were inconsistent with a continued existence of the employer–employee relationship, the jury could have found that the deterioration of that relationship was the result of the conduct of Lily's executives and not because of her performance.

We conclude that the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions on whether Lopez failed to perform the duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances. *Gunn*, 554 S.W.3d at 658. We hold that there is thus more than a mere scintilla of evidence that supports the jury's

20

finding that Lily did not have good cause to dismiss Lopez. *Pitzner*, 106 S.W.3d at 727–28. Accordingly, legally sufficient evidence supports the jury's finding of "no" to question two.

## 2. Factual Sufficiency for No Good Cause

Finally, Lily argues that the evidence was factually insufficient to support the jury's finding that it did not have good cause to dismiss Lopez.

Although there was conflicting evidence regarding the caliber of Lopez's performance in the scope of her employment, the jury was the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Much like in our discussion of breach, each party offered evidence that either supported or challenged the quality of Lopez's performance in the scope of her employment. Lily offered evidence that while Lopez was Senior Vice President of Supply Chain, orders were repeatedly not updated in the corporate software and that there were potential supply shortages. Lily credited these issues to Lopez's incompetencies and insubordination. Lopez rebuffed these claims and explained that the issues should not be credited to her performance. She contended that production concerns stemmed from software issues, departmental confusion, and varying customer needs. In light of the entire record, we conclude that there is evidence that both bolsters and undermines Lily's argument that Lopez failed to perform the duties in the scope of her employment that a person of ordinary prudence would have done under the same or similar circumstances.

21

We thus hold that the evidence supporting the jury's determination that Lily did not have good cause to dismiss Lopez was not so weak that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we overrule Lily's third issue.

## V. CONCLUSION

Having overruled Lily's three issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: April 17, 2025